Steven E. ARNOLD, Executor of the Estate of Robert H. Arnold, Plaintiff Below, Appellant,

v.

SOCIETY FOR SAVINGS BANCORP, INC., a Delaware Corporation, David T. Chase, Sanford Cloud, Jr., Lawrence Connell, Robert E. Green, Jerome H. Grossman, Betsy Henley–Cohn, Ronald D. Jarvis, Edward W. Large, Edward J. Okay, John F. Shea, Jr., Florian A. Stang, Jerry F. Stone, Jr., Bank of Boston Corporation, and BBC Connecticut Holding Corporation, Defendants Below, Appellees.

No. 315, 1995.

Supreme Court of Delaware.

Submitted: May 9, 1996.
Decided: June 25, 1996.

**534**

Ronald A. Brown, Jr. (argued), and William Prickett of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Appellant.

A. Gilchrist Sparks, III (argued), and David J. Teklits of Morris, Nichols, Arsht & Tunnell, Wilmington, for Appellees Bank of Boston Corporation and Society for Savings Bancorp, Inc.

Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, Howard S. Zelbo (argued), and Richard F. Ziegler of Cleary, Gottlieb, Steen & Hamilton, New York City, for Individual Defendants.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court *en Banc.*

VEASEY, Chief Justice:

In this appeal we consider the order of the Court of Chancery granting summary judgment and dismissing claims against the constituent corporations and the directors of the merged corporation for damages arising out of a disclosure violation in a merger proxy statement. In an earlier appeal, the directors were found to have committed a breach of their duty of disclosure, but the certificate of incorporation, as authorized by 8 *Del.C.* § 102(b)(7), was found to protect them from personal liability because they acted in good faith. *Arnold v. Society for Sav. Bancorp, Inc.,* Del.Supr., 650 A.2d 1270, 1290 (1994) ("*Arnold I* "). That is the law of the case. We now hold that there is no liability of the corporate defendants for damages on the theories of conversion, vicarious liability or direct liability. Since the aiding and abetting claim against the acquiring corporation is still pending in the Court of Chancery, we express no views as to its merit.

## I. Prior Proceedings

Robert Arnold ("Arnold")[1] filed this action in March 1993 seeking, *inter alia,* to enjoin the merger of Society for Savings Bancorp, Inc. ("Bancorp") into a wholly-owned subsidiary of Bank of Boston. The Court of Chancery denied the injunction, *Arnold v. Society for Sav. Bancorp, Inc.,* Del.Ch., 19 *Del. J.Corp.L.* 219, C.A. No. 12883, 1993 WL

1. Robert Arnold died during the proceedings on remand. His son, Steven Arnold, is the executor of the estate and was substituted as plaintiff.

183698 (May 29, 1993), and entered summary judgment in favor of all defendants after the merger closed, *Arnold v. Society for Sav. Bancorp, Inc.*, Del.Ch., C.A. No. 12883, 1993 WL 526781 (Dec. 17, 1993).

This Court reversed, in part, holding that Bancorp's partial disclosure regarding an earlier bid for one of its subsidiaries was misleading and violated the directors' duty of disclosure. *Arnold I*, 650 A.2d at 1280. In *Arnold I*, we held that the director defendants acted in good faith and did not intentionally violate their duty of disclosure or breach their duty of loyalty. Accordingly, we held that Section 102(b)(7) and Bancorp's certificate of incorporation acted to "shield[ ] the individual defendants from personal liability for the disclosure violation. . . ." *Id.* at 1273, 1286, 1290.[2]

In remanding, this Court stated:

With regard to the issue or issues before the Court of Chancery on remand, we decide only that there is no liability as to any individual defendant. We do not decide whether or not there is any remedy as to any corporate defendant. We leave it to the Court of Chancery to determine whether or not any such remedy is appropriate and, if so, to fashion such a remedy.

*Id.* at 1291.

## II. Procedural Posture

On remand, the Court of Chancery dismissed the complaint as to the director defendants and granted summary judgment in favor of Bancorp and Bank of Boston on all of plaintiff's claims with the exception of his aiding and abetting claim against Bank of Boston.[3] Arnold appeals from the order of the Court of Chancery granting summary judgment on remand, entered as a final judg-

ment pursuant to Ch.R. 54(b), in favor of: (1) the directors of Bancorp on the disclosure claims arising out of the merger; (2) Bancorp on Arnold's claim of conversion and his request for a quasi-appraisal remedy against Bancorp; and (3) Bank of Boston on claims (a) that it was liable for the found disclosure violations in Bancorp's Proxy Statement soliciting approval of the merger because Bank of Boston played a "substantial role" in the preparation of the statement and (b) that Bank of Boston converted the plaintiff's Bancorp stock.[4]

This court reviews the grant of summary judgment *de novo* both as to facts and the law to determine whether or not the undisputed material facts entitle the movant to judgment as a matter of law, viewing the facts of record in the light most favorable to the non-moving party. *Williams v. Geier,* Del.Supr., 671 A.2d 1368, 1375 (1996).

## III. Direct Liability of Bancorp

### A. Conversion

Plaintiff seeks relief against the corporate defendants on a theory of conversion, claiming that they wrongfully exercised control over his Bancorp stock by way of a merger which failed to comply with Delaware law. Plaintiff first contends that the Court of Chancery misconstrued the *prima facie* elements of conversion by requiring that the plaintiff retain a property right in the stock after the conversion. Although the plaintiff expends considerable effort in support of this argument, the Court of Chancery never stated such a requirement. It held:

To establish conversion, Plaintiff must show that he has a *post-merger* property right to the stock of Bancorp and that

---

2. It is to be noted that there had been an injunction proceeding in which the director defendants were potentially liable for equitable relief, but the trial court denied the injunction and Arnold did not seek an interlocutory appeal. Under 8 *Del.C.* § 102(b)(7), directors are not exempt from equitable relief, but are exempt from liability for monetary damages unless an exception set forth in Section 102(b)(7) is applicable. That was not the case here. Therefore, under *Arnold I*, it is the law of the case that the defendant directors are not liable for monetary damages.

3. Arnold's claim against Bank of Boston for aiding and abetting the disclosure violations committed by the director defendants has been deferred by agreement of the parties and the Court of Chancery pending further proceedings.

4. In the current appeal, this Court also requested the parties to brief and argue the issue of whether the corporate defendants were directly or vicariously liable on theories other than the possible liability of Bank of Boston for aiding and abetting.

[Bank of Boston] holds that stock in contravention of his property right. *See Drug, Inc.* [*v. Hunt,* Del.Supr.] 168 A. [87] at 93 [ (1933) ]. Plaintiff's conversion claim turns on whether Plaintiff retains a *post-merger* property interest in the stock of Bancorp.

*Arnold v. Society for Sav. Bancorp, Inc.,* Del.Ch., C.A. No. 12883, mem. op. at 5, 1995 WL 376919 (June 15, 1995) (*"Arnold II"*) (emphasis added). This is a correct statement of the law.

Plaintiff correctly asserts that a claim of conversion requires that, at the time of the alleged conversion: (a) plaintiff held a property interest in the stock; (b) plaintiff had a right to possession of the stock; and (c) the defendant converted plaintiff's stock. *Drug, Inc. v. Hunt,* Del.Supr., 168 A. 87, 93–94 (1933). The Court of Chancery did not require that plaintiff have a property right after the conversion, but rather, after the merger. The distinction is important.

■ Conversion is an "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *Drug, Inc.,* 168 A. at 93. A stockholder's shares are converted by " 'any act of control or dominion ... without the [stockholder's] authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company.' " *Id.* (quoting *Layman v. F.F. Slocomb & Co.,* Del.Supr., 76 A. 1094, 1095 (1909)).

■ By requiring plaintiff to prove that he has a post-merger property right in the stock of Bancorp, the Court of Chancery was simply giving effect to the requirement that, to be actionable, the exercise of control must be wrongful. One can assume that a merger results in the exercise of control and dominion over a stockholder's shares since they become, by operation of law, shares of the surviving company.[5] This exercise of control is not in derogation of a stockholder's rights, however, if the merger is given legal effect.

A stockholder simply has no right to shares in a disappearing corporation after an effective merger. If the merger divested Arnold of his right to hold Bancorp shares, he has no right to possession, and his shares were not converted. Thus, to establish conversion, plaintiff must show that the merger did not effectively exchange his Bancorp shares for those of Bank of Boston.

Plaintiff asserts two flaws by which the merger is alleged to constitute wrongful exercise of control over his shares. First, he argues that the merger was not properly authorized since the merger agreement submitted to Bancorp's stockholders conditioned the merger on the approval of stockholders in compliance with applicable law. Because the stockholders received misleading information in the proxy statement, the stockholder vote was not taken in accordance with applicable law. Accordingly, the argument continues, a condition precedent to the merger was not satisfied and the merger was wrongful.

Second, plaintiff argues that, since the stockholders voted for the merger based on material omissions from the proxy statement, the vote in favor of the merger did not satisfy the requirements of 8 *Del.C.* §§ 251 and 252. In either case, plaintiff argues, the corporate defendants wrongfully exercised control over his Bancorp stock.

Both arguments rely on the premise that the merger statutes, in and of themselves, contain a duty of disclosure (equivalent in law, for example, to the express statutory duty to secure a majority vote of the outstanding stock) and that a violation of such disclosure duty renders the merger void *ab initio.* Plaintiff argues that, as a consequence, the corporate defendants had no power to convert his shares to shares of the surviving corporation at the time the certificate of merger was filed.

The corporate defendants, however, complied with all of the express statutory requirements for the merger.[6] The merger statutes do not explicitly require the compa-

---

5. *Shidler v. All American Life & Fin. Corp.,* 8th Cir., 775 F.2d 917, 925 (1985).

6. Plaintiff relies on *Shidler v. All American Life & Fin. Corp., supra,* for the proposition that a merger which does not comply with the law constitutes conversion. The Eighth Circuit, applying Iowa Corporation Law, held that a merger which did not receive the majority vote of each class of stock was void. *Id.* at 925. In that case, the merger received the vote of only 42% of a class

ny to inform stockholders of all material facts.[7] The duty of disclosure is a judicially imposed fiduciary duty which applies as a corollary to the statutory requirements. *Stroud v. Grace,* Del.Supr., 606 A.2d 75, 87 (1992).[8] *See also Cinerama, Inc. v. Technicolor, Inc.,* Del.Supr., 663 A.2d 1156, 1163 (1995).

Plaintiff argues by analogy from *Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858 (1985), that an uninformed stockholder vote does not satisfy the requirement in Section 251(c) of a stockholder vote. This Court held in *Van Gorkom* that:

> a director has a duty under 8 *Del.C.* § 251(b), along with his fellow directors, to act in an informed and deliberate manner in determining whether to approve an agreement of merger before submitting the proposal to the stockholders.

*Id.* at 873. The argument is a *non sequitur.* The duty to act in an informed and deliberate manner when following the statutory procedure arises out of the fiduciary duties imposed upon directors by decisional law. Hence, the argument that the disclosure violation renders the statutory merger void must fail.

Finally, the principle asserted by plaintiff would create uncertainty for third parties dealing with Delaware corporations. To assure themselves that the corporation is validly existing, third parties that transact business with the surviving corporation are obliged to investigate only the specific steps explicitly required under the merger statutes. If a disclosure violation committed in good faith renders a merger void, third parties would be required to consider whether constituent corporations had disclosed all material facts in connection with the proxy solicitation leading to the merger vote. It is an understatement to note that this is a significant burden and would create uncertainty about the validity of mergers.

Since the corporate defendants had the legal power to file the certificate of merger once they complied with the statutory requirements, plaintiff has not established the elements of conversion. A good faith violation of the common law duty of disclosure may give rise, in certain circumstances, to equitable relief or to directorial liability.[9] But such a violation does not render void *ab initio* a merger which complies with the statutory requirements.[10]

### B. Quasi–Appraisal

Plaintiff contends that he is entitled to a quasi-appraisal remedy against Bancorp be-

---

*of shares when the statute required a majority. Shidler* did not involve an allegation of the breach of a common law duty. It involved simply a failure to receive the statutory minimum vote—a condition precedent to a merger.

**7.** 8 *Del.C.* § 251(c), for example, provides:
> The [merger] agreement ... shall be submitted to the stockholders of each constituent corporation at an annual or special meeting for the purpose of acting on the agreement. Due notice of the time, place and purpose of the meeting shall be mailed to each holder of stock, whether voting or nonvoting, of the corporation at his address as it appears on the records of the corporation, at least 20 days prior to the date of the meeting. The notice shall contain a copy of the agreement or a brief summary thereof, as the directors shall deem advisable.

**8.** This Court has cautioned against "ignoring the clear language of the General Corporation Law in favor of other legal or equitable principles." *Stroud,* 606 A.2d at 87. In *Stroud,* for instance, this Court refused to extend the duty of disclosure to a charter amendment vote in which a proxy statement was not used.

**9.** We have stated:
> Stockholder approval of an organic, statutory change must comply with the statutory procedure and must be based on full and fair disclosure. The burden rests on the party relying on stockholder approval to establish that the approval resulted from a fully informed electorate and that all material facts relevant to the transaction were fully disclosed.

*Williams v. Geier,* Del.Supr., 671 A.2d 1368, 1379 (1996). If timely sought, an injunction, corrective disclosure or rescission may be appropriate. Subject to an exemption authorized by 8 *Del.C.* § 102(b)(7), damages against directors may be available. The appropriate remedy for a disclosure violation in connection with an organic, statutory change depends on many factors. But if the statutory procedure is followed, the organic change is authorized and effective.

**10.** Plaintiff's argument that Bank of Boston was not a *bona fide* purchaser and is liable for conversion need not be reached since the merger is not a wrongful exercise of dominion over plaintiff's Bancorp shares.

cause: (1) it conceded that the Court of Chancery could impose such a remedy if the director defendants were found to have violated the duty of disclosure, and (2) such a remedy is appropriate where corporate defendants consummated a merger by way of a misleading proxy statement in violation of sections 251 and 252.

### 1. The Concession Argument

Plaintiff points to three instances in which he alleges that Bancorp conceded that a quasi-appraisal remedy could be imposed against it for disclosure violations by the director defendants. Plaintiff first points to the reply brief of Bancorp on the motion for a preliminary injunction, where it stated:

> This Court has directly rejected such arguments, holding that even in the context of an exchange offer, the courts may fashion a non-statutory "quasi-appraisal remedy ... [for] tendering shareholders" if they are proven correct with respect to their non-disclosure or other fiduciary duty claims. *In re Ocean Drilling & Exploration Co. Shareholders Litig.,* Del.Ch. [17 Del.J.Corp.L. 326, 341, 1991 WL 70028 (1991) ].

> While such a remedy involves a significant expenditure in terms of time and legal fees, the "irreparability" of any harm caused by the defendants' conduct is limited to a large extent by the availability of the quasi-appraisal remedy.

Second, plaintiff claims that a statement by defense counsel during oral argument before the Court of Chancery on the preliminary injunction is a concession. This is the same statement which plaintiff claimed, in the first appeal, constituted a waiver of the Section 102(b)(7) protection of the director defendants. *Arnold I,* 650 A.2d at 1288–1289. There, counsel for all defendants stated: "I believe the Court could attempt to determine the value of non-disclosures, so to speak, or determine a quasi-appraisal remedy." *Id.* at 1289. This Court held that this statement "hardly constitutes the unequivocal facts necessary to find a voluntary, intentional relinquishment of the protection of Section 102(b)(7)." *Id.*

Plaintiff also asserts that Bancorp again conceded a quasi-appraisal remedy on appeal to this Court in *Arnold I.* In the Supplemental Answering Brief of all defendants, it was stated:

> Importantly, defendants noted in their briefs that the trial court could fashion appropriate quasi-appraisal or other remedies in the event plaintiff proved its case, but simultaneously stated that Section 102(b)(7) protected the directors from monetary damages. Contrary to plaintiff's contention, these positions are not inconsistent, since if plaintiff were to prove the proper elements of a cause of action (which he has not done), the remedies may run against the corporate defendants. *Gaffin v. Teledyne, Inc.,* Del.Supr., 611 A.2d 467, 472 (1992) (relied upon by plaintiff recognizing that a corporation may be liable for disclosure violations if the elements of equitable or legal fraud are established); *In Re [re] Ocean Drilling & Exploration Co. Sh. Litig.* [17 Del.J.Corp.L. 326] (the case cited by defendants at oral argument and in briefs below, noting the availability of quasi-appraisal remedy against the corporate tender offeror).

The Court of Chancery concluded that the corporate defendants "consistently characterized quasi-appraisal as a remedy, not a cause of action." *Arnold II,* mem. op. at 11. The corporate defendants, according to the Court of Chancery, were merely asserting that, if there were a disclosure violation *by the corporate defendants* or a bad faith breach by the directors of their fiduciary duties, these wrongs could be remedied by a quasi-appraisal. Since the corporate defendants have not yet been found to have committed a disclosure violation and the directors' disclosure violation was a good faith omission, the concession is not applicable.

### 2. Substantive Argument

Plaintiff claims that quasi-appraisal is the appropriate remedy for a violation by the corporate defendants of sections 251 and 252. This is the same argument which plaintiff put forth to support his conversion claim. For the same reasons, a good faith disclosure

violation by the directors does not violate the merger statutes.

## C. Direct Liability of Bancorp Based on a Disclosure Duty Owed by the Corporation

■ Plaintiff has not cited a single case in which Delaware courts have held a corporation directly liable for breach of the fiduciary duty of disclosure. Fiduciary duties are owed by the directors and officers to the corporation and its stockholders. This Court has stated: "The only defendant is the corporate entity . . . so there are no fiduciary duty claims." [11] Plaintiffs cite only a single line of dictum from a 1993 Court of Chancery case,[12] and Federal Rule 14a–9 cases under section 14(a) of the 1934 Act.[13]

In order to have standing under section 14(a), the plaintiff must have been a stockholder at the time of the alleged misstatement.[14] Hazen, 2 *Securities Regulation* § 11.3 at 223 (3rd ed. 1995). There is no purchase or sale standing requirement as in section 10(b) cases. *Id.*

Section 14(a) and Rule 14a–9 make it "unlawful for any person . . . to solicit any proxy" by way of a materially misleading proxy statement. *Gould v. American Hawaiian Steamship Co.*, D.Del., 331 F.Supp. 981, 998 (1971). The corporation, as the issuer of the proxy statement, is directly liable under the statute and the rule. *Id.* Liability can be imposed against a corporation for negligently preparing a proxy statement. *Gerstle v. Gamble–Skogmo, Inc.*, 2d Cir., 478 F.2d 1281 (1973). Individual di-

rectors can also be liable personally if they participated sufficiently in the drafting. *See Salit v. Stanley Works*, D.Conn., 802 F.Supp. 728, 733 (1992); *Wilson v. Great Am. Indus., Inc.*, 2d Cir., 855 F.2d 987, 995 (1988).

We see no legitimate basis to create a new cause of action which would replicate, by state decisional law, the provisions of section 14 of the 1934 Act. Such a result would represent a significant change to the existing matrix of duties which governs the relationship among stockholders, directors and corporations. If such a change is to be, it is best left to the General Assembly.

## IV. Vicarious Liability of Bancorp—*Respondeat Superior*

■ Plaintiff also argues that Bancorp is vicariously liable for the actions of its directors under principles of *respondeat superior.* He contends that the directors of Bancorp were acting on its behalf when they solicited proxies in favor of the merger. Simply because the directors enjoy an exemption under the certificate of incorporation and 8 *Del.C.* § 102(b)(7), plaintiff contends that it does not necessarily follow that the corporate defendants benefit from the exemption.

It is certainly true that a principal is liable for wrongs committed by its agents acting in the course of their agency. *Fields v. Synthetic Ropes, Inc.*, Del.Supr., 215 A.2d 427, 432 (1965). Directors, in the ordinary course of their service as directors, do not act as agents of the corporation, however. *See Restatement (Second) of Agency,* § 14C (1958)

---

11. *Gaffin v. Teledyne, Inc.*, 611 A.2d at 472; *see also Emerald Partners v. Berlin*, Del.Ch., C.A. No. 9700, Steele, V.C., mem. op. at 20, 1995 WL 600881 (Sept. 22, 1995) (corporation liable for misleading disclosure only under equitable fraud); *In re Dataproducts Corp. Shareholders Litig.*, Del.Ch., [1990–1991 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 96, 227 at 91,183, 1991 WL 165301 (1991) ("[U]nder Delaware law any disclosure duty owed by the corporation to its shareholders must be predicated upon a theory of legal or equitable fraud.")

12. *See Behrens v. United Investors Management Co.*, Del.Ch., [1993 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 97,805 at 97, 970, 1993 WL

400209 (1993) ("obligation may be seen as a corporate obligation as well").

13. *See Gould v. American Hawaiian Steamship Co.*, D.Del., 331 F.Supp. 981 (1971).

14. Section 10(b) of the 1934 Act is not a useful analogy. In order to have standing to bring a 10(b) claim, the plaintiff must have purchased or sold the securities in reliance on the misstatement. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Therefore, the plaintiff with standing either (1) is no longer a stockholder because he sold his shares, or (2) was not a stockholder at the time of the alleged breach of duty because he purchased his shares after the misstatement.

("Neither the board of directors nor an individual director of a business is, as such, an agent of the corporation or its members.") An agent acts under the control of the principal. The board of directors of a corporation is charged with the ultimate responsibility to manage or direct the management of the business and affairs of the corporation. 8 *Del.C.* § 141(a). A board of directors, in fulfilling its fiduciary duty, controls the corporation, not *vice versa.*[15]

It would be an analytical anomaly, therefore, to treat corporate directors as *agents* of the corporation when they are acting as *fiduciaries* of the stockholders in managing the business and affairs of the corporation.[16] Holding the corporation vicariously liable for the directors' breach of a fiduciary duty "would be flatly inconsistent with the rationale of vicarious liability since it would shift the cost of the directors' breach from the directors to the corporation and hence to the shareholders, the class harmed by the breach." *Radol v. Thomas,* 6th Cir., 772 F.2d 244, 258–259 (1985).

The fact that Bank of Boston or its subsidiaries will ultimately satisfy any vicarious liability imposed on Bancorp[17] should not obscure the fact that imposing vicarious liability here would lead to anomalous results in other cases. It would replicate the discredited notion of awarding damages against the directors followed by indemnification of the directors by the corporation. This result was considered and rejected during the drafting of section 102(b)(7).[18]

## V. Direct Liability of Bank of Boston— Substantial Role

■ Plaintiff claims that Bank of Boston's substantial role in the preparation and distribution of Bancorp's proxy statement renders it liable for the disclosure violations. Assuming *arguendo* that Bank of Boston participated substantially in the process, plaintiff cannot state a claim against Bank of Boston apart from aiding and abetting.[19]

Plaintiff relies on *Shell Petroleum, Inc. v. Smith,* Del.Supr., 606 A.2d 112 (1992), for the proposition that a "substantial role" alone suffices to find Bank of Boston liable for the disclosure violation. SPNV Holdings ("Holdings"), the parent of Shell Partners, Inc. ("Shell"), was the 94.6% stockholder of Shell when Holdings decided to effect a squeeze-out merger of the minority. *Id.* at 113. Holdings argued that it should not be held liable for the disclosure violations contained in a proxy statement issued by Shell. Plaintiff points to the following statements by this Court in response to Holdings' argument:

> Holdings' liability was not premised solely upon its fiduciary duty as a majority shareholder, rather Holdings' liability was based on the substantial role it played in the preparation and distribution of the disclosure materials.

> \*　　\*　　\*　　\*　　\*　　\*

Based upon the significant role played by Holdings in the preparation and distribu-

---

**15.** This does not preclude an individual (whether an officer or not) who also happens to serve on the board of directors from acting as an agent of the corporation pursuant to express or implied authority granted by the board or imposed by law.

**16.** *See Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, Steele, V.C., mem. op. at 20, 1995 WL 600881 (Sept. 22, 1995) ("corporation itself is not liable for a breach of fiduciary duties by its directors"); *In re Wheelabrator Technologies, Inc. Shareholders Litig.,* Del.Ch., 18 Del.J.Corp.L. 778, 798, 1992 WL 212595 (1992); *Gaffin v. Teledyne, Inc.,* Del.Ch. [1987–1988 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 93, 523 at 97, 322, 1987 WL 18430 (1987), *rev'd on other grounds,* Del.Supr., 611 A.2d 467 (1992) ("liability for breach of a director's fiduciary obligation cannot run against the corporation itself").

**17.** 8 *Del.C.* § 259(a).

**18.** *See* Balotti & Finkelstein, 1 *Delaware Law of Corps. and Bus. Orgs.* § 4.19 at 4–359 (Supp. 1996):

> Amending Section 145(b) to allow indemnification of judgments or amounts paid in settlement in derivative suits was rejected as circular since the corporation would simply be paying itself for injury caused to it by the very directors being indemnified by the corporation. Stockholders would not benefit, and the result would be expensive since the corporation would be saddled with both plaintiff's and defendant's attorney fees.

**19.** As noted, Bank of Boston's liability as an aider and abetter of the directors' breach of their duty of disclosure remains to be litigated below.

tion of the disclosure materials, we find the decision of the Court of Chancery finding Holdings liable for the error ... to be manifestly correct.

*Id.* at 116.

*Shell Petroleum* does not support the imposition of liability on an unaffiliated third party simply because that third party participates substantially in the preparation of disclosure materials. Holdings was a majority stockholder attempting to squeeze out the minority stockholders of Shell. As such, it directly owed fiduciary duties to these stockholders. Holdings' substantial role merely served to rebut its assertion that it should not be held responsible for errors in the disclosure materials of its subsidiary, Shell.

Imposing liability on persons or entities solely because of their substantial role in the preparation of misleading proxy statements, in the absence of elements such as scienter, would sweep other actors within its ambit. Lawyers and accountants, in particular, play a substantial role in the preparation of proxy statements and could face exposure to liability for work performed on behalf of Delaware corporations if the broad sweep of a "substantial role" concept contended by plaintiff were to prevail. An interpretation of *Shell Petroleum* which requires a fiduciary relationship—such as Holdings' duty to Shell's minority stockholders—appropriately limits the conceptual reach of this doctrine and the range of potential defendants.

## VI. Liability of the Director Defendants

■ After remand, the director defendants moved for dismissal in light of this Court's holding in *Arnold I*. The Court of Chancery granted the motion, finding that this Court's ruling in *Arnold I* "prevents

Plaintiff from recovering any damages from the Individual Defendants, whether based in law or equity." *Arnold II*, mem. op. at 2. Plaintiff contends that the Court of Chancery erred since *Arnold I* only gave effect to Bancorp's Certificate provision which, consistent with Section 102(b)(7), provided that "no director ... shall be liable ... for monetary damages...." Plaintiff contends, therefore, that the possibility of an equitable remedy, such as rescissory damages, requiring payment of money by the director defendants remains viable after *Arnold I*. Plaintiff requests a remand for a determination, "following discovery, whether there are any 'equitable remedies' that do not constitute 'monetary damages'...."

This argument is without merit. *Arnold I* can be read only as a holding that the directors are free from personal financial liability whether monetary damages arise out of legal or equitable theories. 8 *Del.C.* § 102(b)(7); *Arnold I*, 650 A.2d at 1290. Since they no longer serve as directors and cannot be subject to an injunction, the director defendants are entitled to dismissal. The Court of Chancery correctly decided that this decision is the law of the case.

## VII. Conclusion

While it is often thought to be axiomatic that a wrong must have a correlative remedy, this is not always the case.[20] The stockholders of Bancorp voted to enact the charter provision which now limits recovery against the directors. Thus, the absence of a remedy for monetary damages is directly attributable to the decision of the stockholders of Bancorp to enact the charter provision authorized by 8 *Del.C.* § 102(b)(7) exempting directors from liability.[21] Notwithstanding

---

20. Importantly, the law, while indulging a presumption that effective remedies should be available, also considers values other than individual redress when fashioning a system of remedies. *See* Fallon & Meltzer, *New Law, Non–Retroactivity and Constitutional Remedies,* 104 Harv.L.Rev. 1731 (1991). The *Principles of Corporate Governance* offers a similar balancing as justification for its limitation on damages for duty of care violations. *See* American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.19 cmt. c (1992).

21. As the Court of Chancery correctly stated:
    Plaintiff has no right to expect compensation from innocent parties just because he immunized the persons who do owe him a remedy. He must prove a cause of action against the Corporate Defendants before he is entitled to a remedy from them. If he fails in this effort, he cannot be heard to say that a court of equity allowed a wrong to go unremedied. The stockholders of Bancorp gave up their right to compensation for good faith breaches of duty by their directors. That was their choice.
    *Arnold II*, mem. op. at 18.

Section 102(b)(7), monetary damages are available for wrongful conduct going beyond duty of care violations. Moreover, equitable remedies not involving monetary damages are also permitted. Thus, an injunction or corrective disclosure was an available remedy at an early stage of these proceedings. The mere fact that these remedies were found unavailing does not mean that there should now be a finding of money damages against the corporate defendants.

While section 102(b)(7) and charter provisions adopted thereunder will leave stockholders without a monetary remedy in some instances, they remain protected by the availability of injunctive relief. Stockholders are not discouraged from pursuing such remedies when warranted. The Delaware courts are quite capable of addressing expedited claims of disclosure violations. The Court of Chancery is responsive and this Court has demonstrated its willingness and ability to consider expedited appeals in appropriate injunction cases. *See, e.g., Paramount Communications Inc. v. QVC Network, Inc.,* Del. Supr., 637 A.2d 34, 37 n. 2 (1994); *Paramount Communications, Inc. v. Time Inc.,* Del.Supr., 571 A.2d 1140, 1142 (1989).

If we were to create by decisional law a form of corporate liability for damages, we would be replacing in a different form, *ex post,* a remedy which the General Assembly permitted the stockholders to waive, *ex ante,* by democratic process. 8 *Del.C.* § 102(b)(7). If a monetary damage remedy is to be permitted against the corporate defendants in these circumstances, consideration of such a remedy is the province of the General Assembly. Similarly, the General Assembly can best decide if such a remedy can be waived by enacting a corollary to section 102(b)(7). It is not within the province of the courts to legislate a cause of action and a remedy under these circumstances. *See Williams v. Geier,* 671 A.2d at 1385.

Accordingly, we **AFFIRM** the judgment of the Court of Chancery and **REMAND** for further proceedings regarding the claim against Bank of Boston for aiding and abetting the disclosure violation.