**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 9, 2014
Date Decided: August 7, 2014

R. Bruce McNew
Wilks, Lukoff & Bracegirdle, LLC
1300 North Grant Avenue, Suite 100
Wilmington, Delaware 19806

Steven L. Caponi
David A. Dorey
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801

Re:   *Buttonwood Tree Value Partners, L.P. et al. v. R.L Polk & Co.,*
*Inc. et al.*,
Civil Action No. 9250-VCG

Dear Counsel:

This action involves allegations that the Plaintiffs were induced to sell shares of stock in, or in light of, a corporate self-tender for an inadequate price, due to misrepresentations by the corporation's board of directors, allegedly acting on behalf of controlling stockholders in violation of the directors' fiduciary duties. The Plaintiffs, in addition to bringing this action against the members of the board, also named the corporation itself as a defendant. A corporation owes no fiduciary duties to its owners, the stockholders, however; nor can it aid and abet the fiduciary breaches of those who direct its operations. Therefore, the claims against the corporation must be dismissed.

A. *Background*

The following facts are taken from the Complaint. R.L. Polk & Co., Inc. ("Polk," or "the Company"), the country's oldest consumer marketing information company, was founded in 1870 by Ralph Lane Polk.[1] In 1922, Polk also became involved in the motor vehicle records business.[2] Polk, which is incorporated in Delaware and headquartered in Southfield, Michigan, "has been majority owned and controlled by the Polk family since its founding."[3]

As of March 31, 2011, the Company had 536,397 common shares outstanding.[4] Of this stock, only 51,020 shares, or approximately 9.51% of outstanding shares, were owned by public unaffiliated—that is, non-Polk family—stockholders.[5] Around this time, the Company began exploring the possibility of a self-tender. In March 2011, the Board hired Stout Risius Ross, Inc. ("SRR") to evaluate the fairness of the Company's proposed offer price of $810 per share.[6] On March 28, SRR issued a fairness opinion stating that this offer price was fair.[7]

---

[1] Compl. ¶ 10 (noting that "[t]he Company's mission is to collect and interpret data, and apply the Company's automotive business expertise to help its customers make good decisions").
[2] *Id.* at ¶ 3; *see also id.* at ¶ 10 (noting that "[t]he Company owns Carfax, Inc., the leading provider of vehicle history reports").
[3] *Id.* at ¶ 10.
[4] *Id.*
[5] *Id.*
[6] *Id.* at ¶¶ 30-31.
[7] *Id.* at ¶¶ 31-32; *see also id.* at ¶ 32 (noting that SRR performed a discounted cash flow analysis, a guideline public company analysis, and a merger and acquisition analysis).

The self-tender was subsequently approved by the board and an Offer to Purchase was sent to stockholders.[8]

In the Offer to Purchase, dated March 31, 2011, the Company offered to purchase up to 37,037 of its outstanding shares through a self-tender.[9] This Offer explained

> [m]embers of the Polk family have expressed interest in tendering shares, owned or controlled by them. As a result, this share repurchase is intended to provide both the Polk family members as well as the non-family members an opportunity to tender shares for purchase by the Company. We have been advised that Polk family shareholders intend to tender approximately 10,000 of the shares owned or controlled by them; however, they may tender more or fewer shares.[10]

Further, this Offer to Purchase noted:

> The Board did not consider any of the following as there were no firm offers for: (1) the merger or consolidation of the Company with or into another company or vice versa; (2) the sale or other transfer of all or any substantial part of the assets of the Company; or (3) a purchase of our securities that would enable the holder to exercise control of the Company. In addition, the Polk family has not expressed interest in exploring any such transactions.[11]

---

[8] *Id.* at ¶¶ 30, 33.
[9] *Id.* at ¶¶ 3, 30.
[10] *Id.* at ¶ 35 (internal quotation marks omitted).
[11] *Id.* at ¶ 39 (internal quotation marks omitted).

Additionally, the Offer to Purchase provided that:

> Except as described in this document, we currently have no plans, proposals or negotiations that relate to or would result in:
>
>> An extraordinary transaction, such as a merger, reorganization or liquidation, involving us or any of our subsidiaries;
>>
>> A purchase, sale or transfer of an amount of our assets or any of our subsidiaries' assets that would be material to us and our subsidiaries taken as a whole;
>>
>> A material change in our present indebtedness or capitalization;
>>
>> A change in our present Board of Directors or management;
>>
>> A material change in our corporate structure or business;
>>
>> An acquisition or disposition by any person of our securities; or
>>
>> A change in our articles of incorporation, by-law or other governing documents or an action that could impede the acquisition of control of the Company.[12]

In May 2011, the Company purchased 34,825 outstanding shares, each for $810.[13] Whereas Polk stock had previously traded between $600 and $650 per share, between March 31 and the closing of the self-tender, "approximately 1,524 shares traded in the range of $810 to $860 per share."[14] Plaintiff Buttonwood Tree Value Partners, L.P. ("Buttonwood"), a California limited partnership, tendered

---

[12] *Id.* at ¶ 40 (internal quotation marks omitted).
[13] *Id.* at ¶ 3.
[14] *Id.* at ¶ 38.

1,048 shares in connection with this self-tender.[15] Plaintiff Mitchell Partners L.P. ("Mitchell"), also a California limited partnership, "sold 700 shares for $811 per share on or about May 6, 2011 before the close of the Self-Tender and in reliance upon the disclosures in the Offer to Purchase."[16]

In October 2012, seventeen months after the self-tender, Polk retained investment banking firm Evercore Partners to explore potential strategic alternatives.[17] The Plaintiffs allege that "well prior to that time, the word was out that Polk was for sale."[18] Then, in December 2012, the Company paid a special dividend of $240 per share, which the Plaintiffs aver "far exceeded the usual dividend of $5.00 per share per quarter."[19] Furthermore, this dividend "was almost 10 times as much as the largest prior quarterly dividend of $25 (paid after the Self-Tender) and was 30% of the amount paid in the Self-Tender."[20] The Complaint avers that, "[a]ccording to the Company's 2013 Annual Report, in order to pay such a huge dividend, the Company actually had to borrow $60 million on a line of credit, liquidate $25 million of marketable securities and pay over $32 million in

---

[15] *Id.* at ¶ 8.

[16] *Id.* at ¶ 9.

[17] *Id.* at ¶¶ 5, 41.

[18] *Id.* at ¶ 5; *see also id.* at ¶ 41 ("Plaintiffs understand that Polk had quietly stated it was for sale well before retaining Evercore.").

[19] *Id.* at ¶ 5.

[20] *Id.* (emphasis omitted). According to the Complaint, "[p]rior to the Self-Tender, the Company had historically paid a small dividend: $22 (which included a $10 Special dividend) in FYE March 2011; $36 (which included a $20 special dividend) in FYE March 2010; and $36.50 (which included a $20 Special Dividend) in FYE ending 2009." *Id.* The Plaintiffs note that "[t]he Annual dividend for FYE March 2012 was a historically high $40 per share and the annual dividend FYE March 2013 was $290 per share." *Id.*

cash to fund the transaction."[21] The Company paid other extraordinary dividends following the closing of the self-tender as well.[22]

In June 2013, following an auction process, Polk announced that it had entered into a merger agreement with IHS, Inc. ("IHS"), whereby Polk would be acquired for over $1.34 billion.[23] Through this short-form merger, minority stockholders received $2,675 per share, while majority stockholders received a mixture of cash and equity worth approximately $2,675.[24]

IHS's acquisition of Polk took place twenty-two months after the self-tender, which had valued the Company at approximately $435 million.[25] The Plaintiffs contend that "there had been no material change in the operations or financial results at Polk" that would have increased the Company's value to more than $1.34 billion at the time of its sale to IHS.[26] Instead, they allege that members of the Polk family, including some of the Individual Defendants, benefited themselves by undervaluing the Company at the time of the self-tender, and "depriv[ing] those who tendered their shares into the Self-Tender of the ability to participate in the Sale and Special Dividend."[27]

---

[21] *Id.* at ¶ 44.
[22] *Id.* at ¶ 45.
[23] *Id.* at ¶ 2.
[24] *Id.*
[25] *Id.* at ¶ 3.
[26] *Id.*; *see also id.* at ¶ 42.
[27] *Id.* at ¶¶ 4, 6. The Plaintiffs further allege that, "in order to maintain a 90% ownership interest in the Company, the Polk family needed Polk to initiate the Self-Tender . . . ." *Id.* at ¶ 38. The

B. *Procedural History*

On January 14, 2014, the Plaintiffs, Buttonwood and Mitchell, filed a Verified Class Action Complaint against Polk, as well as the Company's directors, Stephen R. Polk, Nancy K. Polk, Katherine Polk Osborne, David Cole, Rick Inatome, Charles McClure and J. Michael Moore (collectively, the "Individual Defendants"). At the time of the alleged wrongdoing, Stephen Polk was also serving as the Chairman, CEO, and President of the Company.[28] The Plaintiffs had previously brought an action against the Defendants in connection with these same events; that matter was removed to federal court and then voluntarily dismissed without prejudice by the Plaintiffs.[29]

In Count I of their Complaint, the Plaintiffs allege that the Individual Defendants breached fiduciary duties owed to Polk stockholders. In Count II, the Plaintiffs contend that the Company failed to meet its disclosure obligations under Delaware law; aided and abetted the Individual Defendants' breaches of fiduciary duties; and is an indispensable party. The Plaintiffs seek "equitable rescission from Polk and disgorgement from the Polk Family Directors, on behalf of themselves and all other former shareholders that: (a) sold shares into the Self-

---

Complaint avers that "[m]aintaining at least a 90% ownership interest in the Company would only have been imperative to the Polk family if, contrary to the statements in the Offer to Purchase, the Polk family was planning to sell the Company by means of a short-form merger at the time of the Self-Tender." *Id.* at ¶ 39.

[28] *Id.* at ¶ 11.

[29] *Id.* at ¶ 1.

Tender or (b) who tendered into the market in reliance on the Offer to Purchase, from the date of the Offer to Purchase until the close of the Self-Tender."[30]

On March 24, 2014, the Company moved to dismiss Count II for failure to state a claim upon which relief could be granted. Oral argument was held on June 9, 2014. For the following reasons, the Company's Motion to Dismiss is granted.

C. *Standard of Review*

A motion to dismiss pursuant to Court of Chancery Rule 12(b)(6) will be granted only if "the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[31] When considering such a motion, this Court "must assume all well-pleaded facts are true and draw all inferences in favor of the non-moving party."[32]

D. *Analysis*

1. Polk Did Not Owe Fiduciary Duties to its Stockholders

The Plaintiffs allege that Polk, a Delaware corporation, "failed to meet its disclosure obligations under Delaware law as set forth in *Eisenberg v. Chicago Milwaukee Corp. . . .* and *Joseph v. Shell Oil Company . . .* by depriving Plaintiffs

---

[30] *Id.* at ¶ 7.
[31] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[32] *Rich v. Chong*, 2013 WL 3353965, at *3 (Del. Ch. July 2, 2013).

and other members of the Class of all material facts needed to determine how to respond to the Self-Tender, and specifically of the true value of their Polk stock."[33]

In both *Eisenberg*[34] and *Joseph*,[35] this Court addressed requests for injunctive relief that raised, among other things, alleged disclosure violations in connection with tender offers that had not yet been consummated; in *Eisenberg*, a self-tender by the corporation, and in *Joseph*, a tender offer orchestrated by a majority stockholder. Although the Plaintiffs have not elaborated on what law set forth in these two cases supports their disclosure claims against Polk,[36] neither of these cases demonstrates that Delaware *corporations* owe a fiduciary duty of disclosure to their stockholders in connection with a tender offer.[37]

---

[33] Compl. ¶ 69.

[34] 537 A.2d 1051 (Del. Ch. 1987).

[35] 482 A.2d 335 (Del. Ch. 1984).

[36] In their Answering Brief, the Plaintiffs do not even mention *Joseph*. The Plaintiffs do, however, cite to *Eisenberg* in contending that Polk is wrong in its argument (as characterized by the Plaintiffs) "that because a corporation does not owe fiduciary duties to its own shareholders, it can have no duty of any kind in a self-tender and cannot be liable for damages arising from materially deficient disclosures." Pls.' Answering Br. in Opp'n to Def.'s Mot. to Dismiss at 16. To support this contention, the Plaintiffs quote the following passage from *Eisenberg*, for which they insert the bracketed language: "the defendants [which included the self-tendering corporation] have not met their disclosure obligations under Delaware law." *Id.* (internal quotation marks omitted).

[37] *See, e.g.*, *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051, 1057 (Del. Ch. 1987) ("Where a corporation tenders for its own shares, the exacting duty of disclosure *imposed upon corporate fiduciaries* is even 'more onerous' than in a contested offer.") (emphasis added); *Joseph v. Shell Oil Co.*, 482 A.2d 335, 338 (Del. Ch. 1984) (finding "that plaintiffs have shown the reasonable probability that the Court would find, after trial, that *some of the defendants* stand on both sides of the transaction and therefore have a fiduciary duty to the minority shareholders of Shell but that they have failed to meet the high standard of conduct imposed by Delaware law on fiduciaries and therefore, in the interests of the minority stockholders, the tender offer must be held in abeyance until the defendant SPNV [the tender offeror] makes further disclosures to the tender offerees and cures certain deficiencies") (emphasis added).

9

In fact, under settled Delaware law, "[f]iduciary duties are owed by the directors and officers to the corporation and its stockholders."[38] In other words, a corporation does not owe fiduciary duties to its stockholders.[39] Thus, to the extent the Plaintiffs allege that Polk as a corporate entity breached its fiduciary duties in connection with its purported failure to meet its disclosure obligations, Count II must fail.

The Plaintiffs also argue that "Delaware law recognizes disclosure obligations of corporations in making a self-tender even though that duty is not a fiduciary duty."[40] Although corporations do not owe fiduciary duties to their stockholders, this Court has noted

> [t]hat is not to say that a corporation owes no duty or can never be held liable under Delaware law if it promulgates false and misleading disclosures to its shareholders. Rather, it means that under Delaware law any disclosure duty owed by the corporation to its shareholders must be predicated upon a theory of legal or equitable fraud.[41]

Nevertheless, the Plaintiffs have not pled in their Complaint, nor claimed during briefing or at oral argument, that the Company engaged in legal or equitable fraud.

---

[38] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996); *see also In re Dataproducts Corp. S'holders Litig.*, 17 Del. J. Corp. L. 1159, 1170 (Del. Ch. Aug. 22, 1991) ("[A] corporation *qua* corporate entity is not a fiduciary of, and thus cannot owe a fiduciary duty to, its shareholders.").

[39] *See, e.g.*, *In re Wayport, Inc. Litig.*, 76 A.3d 296, 322-23 (Del. Ch. 2013) ("Wayport is not liable for breach of fiduciary duty. As a corporate entity, Wayport did not owe fiduciary duties to its stockholders.").

[40] Pls.' Answering Br. in Opp'n to Def.'s Mot. to Dismiss at 18.

[41] *In re Dataproducts Corp. S'holders Litig.*, 17 Del. J. Corp. L. at 1170; *see also Gaffin v. Teledyne, Inc.*, 1987 WL 18430, at *3 (Del. Ch. Oct. 9, 1987) ("A corporation . . . can be liable to its stockholders where there is fraud or affirmative misconduct.").

In fact, the Plaintiffs have specifically limited their allegations to those claims arising under the internal affairs doctrine, eschewing all other bases of relief.[42] In any event, proof of fraud requires a showing of reasonable reliance, which must be demonstrated for each individual plaintiff; accordingly, our Supreme Court has found that fraud actions by stockholders against corporations cannot be maintained as class actions.[43] Therefore, there is no basis upon which this portion of Count II could survive.

2. Polk Cannot Have Aided & Abetted its Directors' Breaches of Fiduciary Duties

Alternatively, the Plaintiffs allege that Polk aided and abetted the breaches of fiduciary duties purportedly committed by its directors, who clearly did owe such duties to the stockholders, including the Plaintiffs here. Under Delaware law, "[a] *third party* may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in

---

[42] *See, e.g.*, Compl. ¶ 74 ("This claim relates solely to the internal affairs of Polk and arises under the laws of the State of Delaware under which Polk is organized and relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to Polk common stock existing because of Plaintiffs' and the Class's ownership of such shares at the time of the wrongs alleged herein. This claim arises because of the special relationship under Delaware state law between shareholders and the corporation whose shares they own and the rights, duties and obligations relating to and created by Plaintiffs' and the Class's ownership of Polk shares.").

[43] *See, e.g., Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992) ("A class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact.").

the breach."[44]   However, "[a] corporation cannot aid and abet violations by the fiduciaries who serve it."[45]   This is because, as the Plaintiffs themselves recognize, a corporation acts through its directors.[46]   The only way that Polk could have aided and abetted its directors' breaches of fiduciary duties is *through* those directors— the very same actors whom the Company is alleged to have aided.[47]   Consequently, the Plaintiffs' aiding and abetting claim against Polk lacks the knowing participation of a requisite third party.[48]   The Plaintiffs' allegations of aiding and abetting against the Company must therefore fail.[49]

---

[44] *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (emphasis added).

[45] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 54 (Del. Ch. 2014) (citing *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996)).

[46] *See, e.g.*, Pls.' Answering Br. in Opp'n to Def.'s Mot. to Dismiss at 21 (recognizing that "Polk could only act under the control of the Individual Defendants"); Compl. ¶ 21 (alleging that the directors "caus[ed] Polk to fail to disclose material and crucial information in connection with the Self-Tender . . .").

[47] Although one of the Individual Defendants served as both a director and an officer, the Plaintiffs' allegations relate to his conduct as a director.

[48] The Plaintiffs analogize to cases addressing conspiracy allegations.  However, a claim that Polk conspired with its directors on the facts alleged would be similarly nonsensical.  *See, e.g.*, *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872, 889-90 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010) (recognizing that, in a derivative action against the "human agents" of the corporation, there is "no suit by a co-conspirator, on the one hand, and its partner in crime on the other . . . because corporate agents (be they directors, officers, employees or outside contractors) do not conspire with the corporation when they work together to cause the corporation to act.  Rather, the agents' actions are the actions of the corporation itself, and if those actions involve concerted illegal activity with another corporation, it is the two corporations who are, at core, the co-conspirators"); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005).

[49] The fact that this Court reached a similar conclusion on different grounds in *In re Wayport, Inc. Litig.* does not support the Plaintiffs' position.  76 A.3d 296, 323 (Del. Ch. 2013) (holding that a claim against a corporation for aiding and abetting the alleged breach of duty by an officer of that corporation failed for lack of an underlying breach); *see also Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793, at *9 (Del. Ch. July 24, 2009) (refusing to dismiss an aiding and

12

### 3. The Company is Not an Indispensable Party

I have found that the Complaint fails to state a claim against Polk for equitable breach in connection with the disclosures, and that the Company cannot have aided and abetted the breaches of fiduciary duties alleged against the directors. The Plaintiffs do not plead any additional theory under which the Company could be held liable here. The Plaintiffs argue that Polk is necessary to complete recovery in this action, via payment of rescissory damages, but, not having pled a claim against Polk, the Plaintiffs are not entitled to recover such damages.[50] The Plaintiffs argue in their briefing in opposition to the Defendant's Motion to Dismiss that Polk has been unjustly enriched, and that equity must provide a remedy to force Polk to disgorge its wrongful gains; thus, argue the Plaintiffs, Polk is an indispensable party under Court of Chancery Rule 19.[51] There are two flaws in this argument. First, the Plaintiffs have not pled unjust

---

abetting claim against Wayport, Inc.—predicated on breaches of fiduciary duty by *investors* in that corporation—based on the alleged conduct of a Wayport officer).

[50] *See, e.g.*, *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 41 (Del. Ch. 2014) ("An award of rescissory damages is one form of relief that could be imposed if the merger is found not to be entirely fair *and* if one or more of the defendants are found to have violated their fiduciary duty of loyalty. Any award of rescissory damages only would be imposed on those fiduciaries who committed a loyalty breach."); *see also Ryan v. Tad's Enters., Inc.*, 709 A.2d 682, 698 (Del. Ch. 1996), *aff'd*, 693 A.2d 1082 (Del. 1997) ("[A]n award of rescissory damages would be most appropriate where it is shown that the defendant fiduciaries unjustly enriched themselves by exercising their fiduciary authority deliberately to extract a personal financial benefit at the expense of the corporation's shareholders.").

[51] Ct. Ch. R. 19(a)(1) ("A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, . . . . If the person has not been so joined, the Court shall order that the person be made a party. . . .").

enrichment, nor have they pled facts supporting such a claim; they conceded at oral argument that Polk has been sold to a third party and its value distributed to the stockholders, including the Individual Defendants (and one of the Plaintiffs, as well). Polk no longer retains the value resulting from the self-tender, and there is no allegation that IHS—presumably an arms-length buyer of Polk for value—was implicated in any breach in connection with Polk's self-tender. Second, full relief, if warranted, is available from the Individual Defendants, from whom the Plaintiffs seek disgorgement of class assets, as well as damages for breach of fiduciary duty.[52] Thus, the facts pled neither stated a cause of action against Polk nor indicate that Polk is a necessary party for full relief here, and thus indispensible as a party under Rule 19.[53]

---

[52] *See, e.g.*, Compl. ¶ 7 ("This action seeks to recover the $66.7 million or more that these shareholders lost as a result of the Individual Defendants' breaches of fiduciary duty in connection with the Self-Tender . . . and seek[s] disgorgement from the Controlling Shareholders the $62.5 million they obtained through their self-dealing plan.").

[53] In their Reply Brief, the Plaintiffs also argue that, without Polk, this matter is subject to removal to federal court, an action which they describe as against public policy. Even assuming that the Plaintiffs' description of the jurisdictional landscape is correct, a party against whom no claim is pled cannot be held as a sham defendant to enable or prevent jurisdiction.

E. *Conclusion*

For the reasons explained above, Polk's Motion to Dismiss is granted. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III