**Marilyn ZIRN, Plaintiff Below, Appellant,**

v.

**VLI CORPORATION, a Delaware corporation, Robert A. Elliott, Charlotte O'Hara Vorhauer, Personal Representative of the Estate of Bruce Vorhauer, Lawrance A. Brown, Jr., Barbara Best North, and American Home Products, a Delaware corporation, Defendants Below, Appellees.**

**No. 333, 1995.**

Supreme Court of Delaware.

Submitted: May 23, 1996.

Decided: Aug. 23, 1996.

---

Michael Hanrahan (argued), and Chandlee Johnson Kuhn of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Terry R. Saunders, Chicago, IL, of counsel, for Appellants.

Martin P. Tully of Morris, Nichols, Arsht & Tunnell, Wilmington, for Appellees.

David R. Jewell (argued), of Donovan Leisure Newton & Irvine, New York City, for Appellees VLI Corporation, Robert A. Elliott, Charlotte O'Hara Vorhauer, Personal Representative of the Estate of Bruce Vorhauer, Lawrance A. Brown, Jr., Barbara Best North and American Home Products Corporation.

J. Michael Brennan (argued), of Gibson, Dunn & Crutcher, Irvine, CA, for Appellees Robert A. Elliott, Charlotte O'Hara Vorhauer, Personal Representative of the Estate of Bruce Vorhauer, Lawrance A. Brown, Jr. and Barbara Best North.

Hill, Wynne, Troop & Meisinger, Los Angeles, CA, for Appellees Robert A. Elliott, Lawrance A. Brown, Jr. and Barbara Best North.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

VEASEY, Chief Justice.

In this appeal, we follow and apply the law of partial disclosures. We hold that it is materially misleading to advise stockholders in a tender offer transaction of part, but only part, of the advice of the company's patent counsel as to the patent status of the company's most valuable asset. We also hold that the directors are exempt from liability for monetary damages for good-faith disclosure violations by virtue of the company's certificate of incorporation adopting the exemption authorized by 8 Del.C. § 102(b)(7).

We are asked to consider whether defendants below-appellees, VLI Corporation ("VLI"), the individual members of the VLI Board of Directors and American Home Products Corporation ("AHP") (collectively, the "Defendants"), breached their fiduciary duties in connection with the 1987 acquisition of VLI by AHP. On behalf of a class of similarly situated stockholders, plaintiff below-appellant, Marilyn Zirn ("Zirn"), contends, inter alia, that certain disclosures contained in the Schedule 14D-9 (the "14D-9"), disseminated by VLI in connection with AHP's tender offer for up to all of VLI's outstanding shares, were materially misleading absent further, related disclosures. Specifically, Zirn asserts that the 14D-9 materially misstated the views of VLI's special patent counsel concerning the prospects for reinstatement of a patent which inadvertently had been allowed to lapse. The patent at issue protected one of VLI's primary products, the Today© contraceptive sponge.

We hold that, in light of the attendant circumstances, VLI's 14D-9 was materially misleading in that it provided the VLI stockholders with a skewed impression of the prospects for patent reinstatement and, therefore, impeded the stockholders' ability to make an informed decision as to the merits of the VLI–AHP transaction. When VLI undertook to explain the risk that the patent might not be reinstated, it assumed a duty to disclose the correlative likelihood that the patent would be restored, so as to avoid painting an overly bleak picture of the situation with which VLI was faced. We find, however, that, by virtue of 8 Del.C. § 102(b)(7) and the amendment to VLI's Certificate of Incorporation extending the protection of that statutory provision to the VLI board of directors, there can be no liability for monetary damages imposed on the VLI director defendants. Accordingly, we **AFFIRM** the decision of the Court of Chancery entering judgment in favor of the Defendants.

### The Facts

A detailed explication of the facts relevant to this appeal may be found in this Court's earlier, partial disposition of this matter. Zirn v. VLI Corp., Del.Supr., 621 A.2d 773, 774–77 (1993) (Zirn I). Briefly stated, the case arises from the actions of the VLI

Board of Directors and the interaction of VLI and AHP during the period from 1985 to 1988. In 1985, the VLI Board determined that the company could not be sustained as a profitable enterprise absent an infusion of new capital. After an extensive search for potential suitors, only AHP emerged as a willing and suitable partner. Negotiations began in late August 1987, culminating in a proposed change-of-control transaction tentatively structured around a $7.00 per share tender offer by AHP for up to all of VLI's outstanding shares.

Prior to the agreement being executed, however, VLI learned that the patent on its Today© contraceptive sponge, its most valuable asset, had inadvertently been allowed to lapse. Upon learning of this fact, AHP determined that only a merger with VLI would be acceptable. Although the consideration for the merger remained unchanged at $7.00 per share, AHP demanded and received the option to withdraw from the transaction if the patent was not successfully reinstated by March 1, 1988. This agreement was formalized on August 30, 1987, and the VLI Board promptly recommended the transaction to its stockholders.

On September 21, 1987, VLI's petition for patent reinstatement was rejected by the Patent and Trademark Office (the "PTO"). Subsequent events, including a substantial downturn in the stock market and an unexpected decline in sales of the Today© sponge, coupled with increased uncertainty about the likelihood of patent reinstatement, caused AHP to seek renegotiation of the transaction. On November 1, 1987, AHP proposed to change the form of the transaction from a merger to a tender offer/merger and to reduce the tender offer consideration from $7.00 per share to $6.25 per share. In exchange for these concessions, AHP offered to remove the patent reinstatement condition. On November 3, 1987, the VLI Board determined that, in light of the company's perceived need for capital and the absence of any other available suitors, the offer should be accepted.

On November 10, 1987, the VLI Board distributed to its stockholders: (1) a memorandum from VLI's Chief Executive Officer announcing the transaction; (2) a copy of VLI's Schedule 14D–9; and (3) a copy of AHP's Offer to Purchase. The 14D–9 included information concerning the circumstances surrounding the patent lapse and discussed the uncertain prospects for patent reinstatement. The 14D–9 also purported to provide the substance of patent counsel's advice to VLI concerning the likelihood of reinstatement and stated that:

> In July 1987, the Patent expired due to the Company's inadvertent failure to timely pay a maintenance fee. On September 21, 1987, the United States Patent and Trademark Office dismissed the Company's petition to reinstate the Patent. The Company has filed a petition requesting the Patent and Trademark Office to reconsider its dismissal. *The Company is unable to estimate when this petition for reconsideration will be decided by the Patent and Trademark Office and has been advised by special patent counsel that there is a significant possibility of the reconsideration petition not prevailing in the Patent and Trademark Office.*

(Emphasis supplied.) The 14D–9 did not, however, discuss the totality of patent counsel's advice. Specifically, patent counsel had indicated through correspondence to VLI that ultimate success in the PTO was likely and that VLI possessed "an excellent case on the merits." Moreover, contrary to the statement contained in the 14D–9, patent counsel had indicated that final PTO action could be expected by November 21, 1987.

AHP's tender offer closed on December 8, 1987 with 94.8 percent of VLI's outstanding shares having been tendered. The remaining 5.2 percent of the shares were acquired in a short-form merger on January 8, 1988. On the same date, AHP issued a Notice of Merger informing the non-tendering stockholders, including Zirn, that each of their shares had been converted into a right to receive $6.25. Pursuant to 8 *Del.C.* §§ 253 and 262, these individuals were informed of their appraisal rights and were instructed on the proper method of exercising those rights.

### Procedural History and Disposition in the Court of Chancery

Prior to the short-form merger, on December 17, 1987, Zirn filed this class-action suit

naming as defendants AHP, VLI and VLI's individual directors. In July of 1989, the Court of Chancery dismissed Zirn's claims relating to insider trading and conversion. The trial court, however, certified a class consisting of nearly all of VLI's stockholders of record as of November 16, 1987 and allowed the remaining claims of equitable fraud and breach of the duty of disclosure to proceed to trial. *Zirn v. VLI Corp.*, Del.Ch., C.A. No. 9488, mem. op., 1991 WL 20378 (Feb. 15, 1991). After trial concluded, the Court of Chancery granted judgment for the Defendants on all of Zirn's claims. *Zirn v. VLI Corp.*, Del.Ch., C.A. No. 9488, slip op., 1992 WL 136450 (June 10, 1992).

On appeal from that decision, this Court held that the Court of Chancery had applied the wrong standard of materiality, erroneously analyzing the subjective beliefs of the VLI directors. *Zirn I*, 621 A.2d at 779–80. The Court then remanded the matter for further proceedings consistent with its 1993 opinion. On remand, the trial court reached its decision based on the record of the first trial, supplemented by additional discovery on the issue of patent counsel's opinion. Again, the trial court found for Defendants on all claims. *Zirn v. VLI Corp.*, Del.Ch., C.A. No. 9488, mem. op. at 28, 1995 WL 362616 (June 12, 1995). This appeal followed.

In this appeal, Zirn contends that: (1) VLI's Board of Directors breached its fiduciary duty in connection with the disclosure of patent counsel's advice concerning the likelihood of patent reinstatement and the expected timing of reinstatement; (2) AHP breached its duty of disclosure in connection with the January 8, 1988 Notice of Merger by excluding from that document any discussion of patent counsel's advice; and (3) VLI and its directors are liable for equitable fraud. Since the Court of Chancery entered judgment for the Defendants and failed to reach the issue of damages, Zirn seeks from this Court an award of damages and prejudgment interest. We address these contentions *seriatim* below.

### Disclosure Claims

▇▇▇ Zirn contends that the VLI Board of Directors breached its fiduciary duty of disclosure when it prepared and distributed the 14D–9 and that the Court of Chancery erred in holding to the contrary. The issues presented by Zirn involve mixed questions of law and fact. This Court's review is, therefore, *de novo*. In conducting this review,

> if the trial court's factual conclusions "are sufficiently supported by the record and are the product of an orderly and logical deductive process ... we accept them, even though independently we might have reached opposite conclusions." *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972). Nevertheless, in an appropriate case, this Court may review *de novo* mixed questions of law and fact, such as determinations of materiality, *Zirn v. VLI Corp.*, Del.Supr., 621 A.2d 773, 777 (1993), and in certain cases make its own findings of fact upon the record below, *Shell Petroleum, Inc. v. Smith*, Del.Supr., 606 A.2d 112, 114 (1992). The Court will affirm the trial court's legal rulings unless they represent an "err[or] in formulating or applying legal principles." *Gilbert v. El Paso Co.*, Del. Supr., 575 A.2d 1131, 1142 (1990).

*Arnold v. Society for Sav. Bancorp.*, Del. Supr., 650 A.2d 1270, 1276 (1994) (*Arnold I* ).

### A. Disclosure of Patent Counsel's Advice

Zirn argues that VLI's synopsis of patent counsel's advice was materially misleading absent further disclosure. Specifically, Zirn asserts that the discussion of patent counsel's advice contained in the 14D–9 was skewed in that it disclosed only a significant risk of the patent not being reinstated. The Court of Chancery rejected this claim, however, holding that disclosure of a significant risk logically implies the corresponding possibility of the risk not being realized. We disagree and hold that the 14D–9 was materially misleading absent further disclosure of patent counsel's views. Once VLI undertook to discuss the import of patent counsel's advice, it assumed a duty to discuss that advice fully and fairly. To discharge this duty, it was necessary to include in the 14D–9 a discussion of the correlative probability of successful patent reinstatement.

■ It is well-established that the duty of disclosure "represents nothing more than the well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Stroud v. Grace*, Del.Supr., 606 A.2d 75, 84 (1992). This duty inheres any time a corporate board of directors seeks stockholder action. *Id.; see also, Blasius Indus. v. Atlas Corp.*, Del. Ch., 564 A.2d 651, 659 n. 2 (1988) (citing *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858 (1985); *In re Anderson Clayton Shareholders' Litig.*, Del.Ch., 519 A.2d 669, 675 (1986)).

■ Our analysis therefore turns on whether or not the VLI Board disclosed all facts material to the decision faced by VLI's stockholders. The materiality standard is well understood:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929, 944 (1985) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) and adopting *TSC* materiality standard as Delaware law).

■ In addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures. The law of partial disclosure is likewise clear: "[O]nce defendants travel[ ] down the road of partial disclosure ... they ... [have] an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Arnold I*, 650 A.2d at 1280; *see also Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278, 281 (1977) (holding that defendants violated their disclosure obligations when they partially disclosed a reliable, "floor" asset valuation but did not disclose equally reliable "ceiling" values).

■ The Defendants argue with some force, however, that no aspect of patent counsel's advice standing alone was required to be disclosed.[1] We need not decide in the abstract whether the general subject matter of patent counsel's advice was material. Under *Arnold*, the disclosure of even a non-material fact can, in some instances, trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

■ VLI's Schedule 14D–9 simply stated that "[t]he Company ... has been advised by special patent counsel that there is a significant possibility of the reconsideration petition not prevailing in the Patent and Trademark Office." This is certainly not an untrue statement. But, standing alone, it paints an unduly bleak picture of VLI's chances for success in the PTO. Patent counsel appeared to believe that the prospects for reinstatement were quite good. In a November 3, 1987 letter from patent counsel to the VLI

1. Although determination of this issue is unnecessary to our decision in this case, it could be argued on the ground of attorney-client privilege that VLI was not required to disclose patent counsel's advice unless that privilege was waived by VLI. *Zirn v. VLI Corp.*, Del.Supr., 621 A.2d 773, 780 (1993) (*Zirn I*); *see also Tackett v. State Farm Fire & Casualty Ins. Co.*, Del.Supr., 653 A.2d 254, 259–60 (1995) (discussing circumstances which give rise to waiver of the privilege). Moreover, the subject matter of patent counsel's advice involved "soft" information and could be characterized as highly speculative. Nevertheless, "once defendants traveled down the road of partial disclosure ..., they had an obligation to provide the stockholders with an accurate, full, and fair characterization" of patent counsel's advice. *Arnold v. Society for Sav, Bancorp, Inc.*, 650 A.2d 1270, 1280 (1994) (*Arnold I*).

Board of Directors, patent counsel expressed the view that, "[r]egarding the likely outcome of [patent counsel's] ... efforts [to reinstate the patent], it is my opinion, and the opinion of other members of my law firm, that *we have an excellent case on the merits and there is a good chance that we will prevail in the PTO.*" (Emphasis supplied.) Patent counsel further stated that he was "confident that the VLI patent could ultimately be reinstated by one mechanism or another."

Thus, it is clear that VLI's partial disclosure failed to convey the totality of patent counsel's views and was thus materially misleading. VLI's stockholders were faced with a single decision: whether to tender their shares or retain them. In making this determination, one factor was particularly relevant, *viz.,* whether the AHP offer of $6.25 per share represented an adequate price given the aggregate value and prospects of the company. If a stockholder viewed the company's offer as inadequate, those shares would likely not have been tendered. Those who chose to tender despite an inadequate price likely would have done so for extrinsic reasons (*e.g.,* personal financial needs, the likelihood of the company folding before an adequate offer came along or reluctance to pursue an appraisal remedy). Nevertheless, any misstatement contained in the 14D-9 which misled the stockholders concerning the value of the company would necessarily be material.

In light of the partial disclosure, the undisclosed advice of patent counsel was extremely relevant to a reasonable stockholder's valuation of the corporation. The patent provided protection for VLI's most valuable asset, the Today© contraceptive sponge. The failure accurately to convey the prospects for reinstatement was misleading in a material way, because it gave an unduly pessimistic assessment of VLI's chances for success in the PTO. This fact had a direct bearing on the individual stockholder's ability to value the corporation accurately and,

consequently, this fact was one that a reasonable investor would want to know. In light of the partial disclosure of patent counsel's opinion, a more balanced disclosure thereof would have significantly altered the "total mix of information" available to the individual VLI stockholder. *TSC,* 426 U.S. at 449, 96 S.Ct. at 2132; *Rosenblatt,* 493 A.2d at 944.

The Court of Chancery rejected Zirn's claim of materiality, however, stating that the language of the Schedule 14D-9 was sufficiently tempered so as to avoid any misleading result. Essentially, the trial court held that the concept of a significant risk of failure implies a correlative probability of success. This analysis runs contrary to established precedent, however. For example, in *Lynch v. Vickers Energy Corporation,* this Court addressed a situation involving comparable facts. *Lynch,* 383 A.2d at 281. In *Lynch,* the Court held that disclosure of a floor value for the company's assets without the related disclosure of equally trustworthy ceiling estimates was materially misleading. In so holding, the Court reversed the determination of the Court of Chancery that qualifying language [2] in the tender offer materials was sufficient to avoid misleading the stockholders.

VLI argues at length that the holding we now reach will be tantamount to a rejection of the materiality requirement in cases of partial disclosure. This argument is plainly untenable. The partial disclosure rule is implicated only where the omission of a related fact renders the partially disclosed information *materially* misleading. Thus, the materiality standard announced by the United States Supreme Court in *TSC Industries v. Northway* and adopted by this Court in *Rosenblatt v. Getty Oil* is still controlling in this context. The only distinction between this case and the traditional disclosure context is that, in the partial disclosure setting, the initial disclosure may sometimes be voluntary rather than mandatory.

**2.** The disclosure materials at issue in *Lynch* stated that the "the Company's net asset value ... is *not less* than $200,000,000 ... and could be substantially greater." *Lynch v. Vickers Energy Corp.,* Del.Supr., 383 A.2d 278, 280 (1977). Although the Vickers board of directors had received estimates in the $200,000,000 range, they had also received estimates in the $250,000,000 to $300,000,000 range. Despite the presence of qualifying language, the Court held that failure to disclose the higher estimates was materially misleading.

VLI further asserts that the holding we reach today will impose an undue burden on corporate fiduciaries and will force directors to disclose all historical information to which they have access. The result, it is argued, will be a deluge of information which will render it impossible for stockholders to determine what is and what is not significant. This is an equally untenable position. VLI, of its own accord, determined to provide stockholders with only a one-sided portion of patent counsel's advice. One curative statement could have obviated the need for this litigation. Our holding here, as in *Arnold* and *Lynch,* does not compel disclosure of *all* information, it simply requires disclosure of enough information to avoid misleading the stockholders.

We also recognize, as the Court of Chancery did, that "[t]he goal of disclosure . . . is not to flood shareholders in a sea of related, but immaterial information that ripples endlessly away from the financial or governance core of the matter." [3] The goal of disclosure is, however, to provide a balanced and truthful account of those matters which are discussed in a corporation's disclosure materials.

### B. Disclosure Relating to the Timing of Patent Reinstatement

■ In a related claim, Zirn contends that the Court of Chancery erred in holding that the misstatement of the VLI Board concerning the timing of possible patent reinstatement was immaterial. Zirn's claim arises from an obvious inconsistency between correspondence sent to VLI by patent counsel and the characterization of that information by the VLI Board. On November 3, 1987, patent counsel sent a letter to VLI indicating that "no final PTO action is expected until approximately November 21, 1987." In the 14D-9, issued on November 10, 1987, however, the VLI Board indicated that "[t]he Company is unable to estimate when this petition for reconsideration will be decided by the Patent and Trademark Office. . . ." In light of the above correspondence from patent counsel, the Court of Chancery concluded

that the VLI Board misstated the information in its possession concerning the projected time frame for PTO action on the reinstatement petition. The Chancellor held that there was "no factual basis" for this statement and "one could conclude that the Schedule 14D-9 was misleading on this point." *Zirn v. VLI Corp,* Del.Ch., C.A. No. 9488, mem. op. at 18-19, 1995 WL 362616 (June 12, 1995). The Chancellor nevertheless held that this misstatement was not material and, therefore, not actionable.

Zirn argues that the Chancellor misapplied the materiality standard in reaching this determination. This argument, however, is without merit. The trial court correctly concluded that the information pertaining to reinstatement, while relevant to the Board's decision to renegotiate the original merger agreement and to accept the lower price of $6.25 per share, was not material to the VLI stockholders' decision to tender to AHP. The Court of Chancery correctly stated that the original, $7.00 per share transaction was no longer available. Thus, the stockholders were not faced with a decision of whether to hold out for the higher offer. Instead, the VLI stockholders were deciding whether to accept a $6.25 per share offer. Since information pertaining to the timing of the reinstatement was not relevant to a determination of the adequacy of the $6.25 per share offer, this information was not material. The Court of Chancery was correct in so holding.

### C. Disclosures Contained in AHP's Notice of Merger

Zirn contends that the Court of Chancery failed to address her claim that AHP breached its duty of disclosure in connection with the January 8, 1988 Notice of Merger. The crux of Zirn's claim is that AHP failed to disclose material information pertaining to patent counsel's opinion on the likelihood of patent reinstatement. VLI counters that the Court of Chancery considered all claims that were presented to it, that this claim was not fairly presented and that, in any event, the information was not material and need not have been disclosed.

---

3. Report of the Court of Chancery to the Delaware Supreme Court Pursuant to Rule 19(c) Concerning *Zirn v. VLI Corp.,* Del.Supr., No. 333, 1995, at 4-5 (April 18, 1996).

In its opinion on remand, the Court of Chancery did not discuss Zirn's contention concerning AHP's failure to disclose the advice of patent counsel in the Notice of Merger. This fact is easily explained, however, by the remainder of the trial court's holding. Since the Court of Chancery deemed VLI's disclosures in the 14D–9 to be adequate on this point, duplication of this information in the Notice of Merger would have been superfluous. In light of our holding concerning VLI's partial disclosure of patent counsel's advice, this resolution of Zirn's claim is no longer adequate. Moreover, contrary to the assertions of VLI, the record reveals that this claim was fairly raised before the trial court. Accordingly, we reach the merits of Zirn's contention. Our standard of review is *de novo. Zirn I,* 621 A.2d at 777.

■■ The duty of an acquiror in AHP's position is clear. Having become the majority stockholder of VLI, AHP "bears the burden of showing complete disclosure of all material facts relevant to a minority shareholder's decision whether to accept the short-form merger consideration or seek an appraisal." *Shell Petroleum, Inc. v. Smith,* Del.Supr., 606 A.2d 112, 114 (1992); *see also Bershad v. Curtiss–Wright Corp.,* Del.Supr., 535 A.2d 840, 846 (1987); *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 703 (1983). The question presented is, therefore, one of materiality. The Court is mindful, however, of the context in which the alleged omission occurred.

■■ As the Court of Chancery correctly held,

[t]he purposes of the disclosure notifying the remaining shareholders of a short-form merger are two-fold. The first, of course, is to notify these shareholders of their right to cash. The second is to alert them to an event which may give rise to possible judicial remedies, most notably appraisal of the fair value of their shares.

*Zirn v. VLI,* Del.Ch., C.A. No. 9488, mem. op. at 26, 1995 WL 362616 (June 12, 1995). A Notice of Merger filed pursuant to 8 *Del.C.* §§ 253 and 262 is primarily intended to notify the stockholders of action being taken by the parent corporation and to apprise the stockholders of their appraisal remedy. The statutory mechanism authorized by section 253 is intended to allow corporations holding a 90 percent or greater stake in another company to use an essentially summary procedure to effect a merger of the two entities. While voluminous disclosures may be included in the section 253 Notice of Merger, such elaboration is generally not required.[4] Moreover, the short answer here is that there was no partial disclosure issue which was the central problem with VLI's 14D–9 at the tender offer stage.

The tension between the summary nature of the section 253 procedure and the supplementary duties provided by common law is therefore clear. This apparent tension is resolved through an analysis of the factual circumstances of the case and an inquiry into the potential for deception or misinformation. In the instant case, AHP provided notice to VLI's stockholders adequate to inform them of their right to receive cash for their shares and their alternative right to an appraisal remedy. In furtherance of its common-law

4. Greater disclosure may be required in some instances. For example, as the Court of Chancery has recognized, greater disclosure, including disclosure of "soft" information, may be required

in cases involving corporate self-tenders and cash-out mergers that are not contested, where, as a result, the disclosure to shareholders is normally one-sided. In such transactions, where corporate fiduciaries were provided with information that, although arguably "soft," indicated with some degree of reliability that the corporation was worth more than the tender offer or merger price, our Courts have held that such information must be publicly disclosed to stockholders.

*Weinberger v. Rio Grande Indus., Inc.,* Del.Ch., 519 A.2d 116, 128 (1986) (citing *Lynch v. Vickers Energy Corp.,* Del.Supr., 383 A.2d 278 (1977) ("going private" tender offer); *Kahn v. United States Sugar Corp.,* Del.Ch., C.A. No. 7313, Hartnett, V.C., 1985 WL 4449 (December 10, 1985) (same); *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701 (1983) (merger)).

In the instant case, however, disclosure was provided by both AHP and VLI in connection with the initial tender offer. Moreover, the terms of the tender offer were reached through arm's-length negotiations. In this context, the Notice of Merger need generally not be as detailed as in a context where the specter of intentional misinformation is present.

duties, AHP provided high and low bid quotations for VLI stock dating from the first quarter of 1985 until the fourth quarter of 1987. In addition, AHP provided the VLI stockholders with summary financial data and made reference to VLI's more complete filings with the Securities and Exchange Commission.

The omission of patent counsel's advice does not bear directly on the accuracy or other *bona fides* of the disclosure made by AHP. *Cf. Shell Petroleum*, 606 A.2d at 114–15; *Sealy Mattress Co. of N.J. v. Sealy, Inc.*, Del.Ch., 532 A.2d 1324, 1338–40 (1987). Rather, patent counsel's views would bear only indirectly on the value of the corporation.[5] Such information would be difficult to interpret and might well have confused the VLI stockholders in their efforts to digest the financial data included in the Notice of Merger. Moreover, this information is outside the purview of typical "soft information," which is generally limited to valuations of corporate assets and other appraisal-related information. *See, e.g., Weinberger v. Rio Grande Indus., Inc.*, Del.Ch., 519 A.2d 116, 127 (1986) (defining "soft" information as "valuation data based upon 'forwardlooking' information or estimates, including asset appraisals and income or cash flow projections").

The situation with which AHP was faced must also be viewed in contradistinction to that of VLI. AHP did not undertake to disclose only partially the advice of patent counsel or make any misleading disclosures concerning that advice. Moreover, unlike the situation encountered by VLI in connection with the 14D–9, AHP did not endeavor,

nor was it required, to provide a detailed explanation of the motivations behind the short-form merger. Thus, the utility of disclosing patent counsel's advice in the Notice of Merger would be questionable at best. In addition, it is not clear to what extent AHP was privy to the confidential communications of patent counsel to VLI. The totality of the circumstances therefore indicates that disclosure should not be required in such a situation. Accordingly, we hold that, under the unique circumstances faced by AHP, the advice of patent counsel was not material.

### Equitable Fraud

Zirn contends that the Court of Chancery erred in failing to hold VLI and its directors liable for equitable fraud. The Court of Chancery determined that no equitable fraud had been shown since the alleged misstatements and omissions were not material. In light of the analysis above, however, it is clear that this issue must be revisited. Nevertheless, a review of the facts presented reveals that, despite the presence of a material misstatement in the 14D–9, Zirn has failed to state a *prima facie* case for equitable fraud.

■ In *Gaffin v. Teledyne, Inc.*, Del. Supr., 611 A.2d 467, 472 (1992), this Court laid down the elements of common-law fraud as follows:

1) a false representation, usually one of fact, made by the defendant;

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

---

**5.** *See Rio Grande Indus.*, 519 A.2d at 126–27, where the Court of Chancery applied the test enunciated by the Third Circuit Court of Appeals in *Flynn v. Bass Brothers Enters., Inc.*, 3d. Cir., 744 F.2d 978 (1984) to determine whether certain "soft" information should have been disclosed. As stated by the Court of Chancery:

In *Flynn*, the Third Circuit held that the existence of a duty to disclose so-called "soft information" (*i.e.,* valuation data based upon "forwardlooking" information or estimates, including asset appraisals and income or cash flow projections) should be determined on a case-by-case basis "... by weighing the potential aid such information will give a shareholder against the potential harm, such as undue

reliance, if the information is released with a proper cautionary note." 744 F.2d at 988.

In making that determination, the *Flynn* court employed a balancing test which involves weighing "... the facts upon which the information is based; the qualifications of those who prepared or compiled it; the purpose for which the information was originally intended; its relevance to the stockholders' impending decision; the degree of subjectivity or bias reflected in its preparation; the degree to which the information is unique; and the availability to the investor of other more reliable sources of information." 744 F.2d at 988. *Rio Grande Indus.*, 519 A.2d at 126–27.

3) an intent to induce the plaintiff to act or to refrain from acting;

4) *the plaintiff's action or inaction taken in justifiable reliance upon the representation;* and

5) damage to the plaintiff as a result of such reliance.

*Id.* (emphasis supplied) (quoting *Stephenson v. Capano Dev., Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983)). Unlike common law fraud, however, at equity "there is no requirement that the defendant have known or believed its statement to be false or to have made the statement in reckless disregard of the truth." *Stephenson,* 462 A.2d at 1074. Thus, equity provides a remedy for negligent or innocent misrepresentations.

▮ To state a *prima facie* case for equitable fraud, plaintiff must therefore satisfy all the elements of common-law fraud with the exception that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly. Most significant among the elements stated above, at least for purposes of this appeal, is the requirement of justifiable reliance. As VLI properly points out, Zirn did not tender in response to VLI's 14D-9 and did not cash out her shares in response to AHP's Notice of Merger.[6] Thus, on these facts, no reliance has been shown. Having failed to satisfy one of the elements required to demonstrate a *prima facie* case for equitable fraud, Zirn's claim must fail.

Moreover, the class action is a device ill-suited to the disposition of claims of equitable fraud: "A class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact." *Gaffin,* 611 A.2d at 474 (citing *In re One Bancorp Sec. Litig.,* D.Me., 136 F.R.D. 526, 533 (1991); *Katz v. Comdisco, Inc.,* N.D.Ill., 117 F.R.D. 403, 412 (1987); *Gavron v. Blinder Robinson & Co.,* E.D.Pa., 115 F.R.D. 318, 325 (1987); *Beebe v. Pacific Realty Trust,* D.Ore., 578 F.Supp. 1128, 1151–52 (1984)).

In light of our holding concerning the applicability of section 102(b)(7), it is also clear that no relief can be afforded to plaintiffs even if a *prima facie* case of equitable fraud could be shown. Pursuant to the amendment to VLI's Certificate of Incorporation extending to the VLI director defendants the protection authorized by section 102(b)(7), "the directors are free from personal financial liability whether monetary damages arise out of legal or equitable theories." *Arnold v. Society for Sav. Bancorp,* Del.Supr., 678 A.2d 533 (1996) (*Arnold II*) (citing 8 *Del.C.* § 102(b)(7); *Arnold I,* 650 A.2d at 1290). As in *Arnold,* the VLI directors are not now subject to whatever injunctive relief might have been available at an earlier stage of the proceedings. Accordingly, there are no remedies for equitable fraud available to the plaintiff class.

### *Damages and Pre–Judgment Interest*

In her final claim on appeal, Zirn contends that this Court should set the measure of damages in the case at bar so as to avoid another remand to the Court of Chancery. Since the Court of Chancery did not find the Defendants liable on any of Zirn's claims, the Chancellor did not reach the issue of damages. Zirn now contends that this Court should set the measure of damages at the difference between the original merger agreement price of $7.00 per share and the tender offer price of $6.25 per share. Defendants contend that VLI's Certificate of Incorporation provision, which extends the protection of 8 *Del.C.* § 102(b)(7) to VLI's directors, acts as a bar to the imposition of monetary damages against the VLI director defendants.

▮ We agree with the Defendants and hold that the VLI directors are shielded from liability by 8 *Del.C.* § 102(b)(7) and the amendment to VLI's Certificate of Incorporation giving effect to that statutory provision. The record reveals that any misstatements or omissions that occurred were made in good faith. The VLI directors lacked any

---

6. In addition, this action was filed on December 17, 1987, prior to AHP's dissemination of the January 8, 1988 Notice of Merger. Thus, justifi-

able reliance on that document cannot possibly be demonstrated.

pecuniary motive to mislead the VLI stockholders intentionally and no other plausible motive for deceiving the stockholders has been advanced. A good faith erroneous judgment as to the proper scope or content of required disclosure implicates the duty of care rather than the duty of loyalty. *Arnold I*, 650 A.2d at 1287–88 & n. 36. Thus, the disclosure violations at issue here fall within the ambit of the protection of section 102(b)(7).[7]

Had the stockholders of VLI acted at the appropriate time and demonstrated the disclosure violation found herein, they could have sought an injunctive remedy. *Arnold II*, 678 A.2d at 542. Unfortunately, the time for such action has passed. We recognize that our decision will leave the former stockholders of VLI without any redress. *Arnold II*, 678 A.2d at 541. This, however, is the result envisaged by section 102(b)(7). VLI's stockholders approved the amendment to the VLI Certificate of Incorporation with full knowledge of its import.

### Conclusion

We hold that VLI's failure to disclose the portion of patent counsel's opinion dealing with the likelihood of successful patent reinstatement constituted a material omission in the context of the partial and inferentially pessimistic discussion in the 14D–9 of patent counsel's advice. When the VLI Board of Directors undertook to disclose a portion of patent counsel's views, it assumed a duty to do so fully and fairly. In order to discharge this duty, the VLI Board was obligated to disclose not only the possibility of failure but also the correlative possibility of successful patent reinstatement because that was the context of patent counsel's opinion. The absence of any further discussion rendered VLI's disclosure documents misleading and incomplete.

■ Nevertheless, the individual members of the VLI Board are effectively shielded from liability by the company's Certificate of Incorporation Amendment implementing the statutory protection allowed by 8 *Del.C.* § 102(b)(7). Thus, although we find that the VLI Board of Directors breached its fiduciary duty of disclosure, no relief may be afforded to plaintiff at this juncture. Moreover, whatever liability might have accrued to the directors cannot be treated as the vicarious responsibility the corporation they served. *Arnold II*, 678 A.2d at 540. Accordingly, the decision of the Court of Chancery is **AFFIRMED.**

---

**7.** The Court is cognizant of its statement in *Zirn I* pertaining to this issue. The Court there noted that "the legislative history of the statute authorizing [the amendment to VLI's Certificate of Incorporation] ..., 8 *Del.C.* § 102(b)(7), indicates that corporations are empowered to shield directors from breaches of the duty of care, not the duty of loyalty, which also embraces the duty of disclosure that is at issue here." *Zirn I*, 621 A.2d at 783. That statement was made before the record here had been fully developed and before the developments in the law represented by *Arnold.* Moreover, this statement was not necessary to the holding in *Zirn I*, and therefore is dictum. "[T]he doctrine of the law of the case normally requires that matters previously ruled upon by the same court be put to rest." *Frank*

*G.W. v. Carol M.W.*, Del.Supr., 457 A.2d 715, 718–719 (1983). "The doctrine stands for the proposition that 'findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or in a later appeal.'" *Insurance Corp. of America v. Barker*, Del.Supr., 628 A.2d 38, 40 (1993) (quoting *Westbrook v. Zant*, 11th Cir., 743 F.2d 764, 768 (1984)). The doctrine is not inflexible, however. It applies only to those matters necessary to a given decision and those matters which were decided on the basis of a fully developed record. Where, as here, this Court could not have envisioned the full factual posture of a particular claim, the prior ruling cannot be considered to be the law of the case.