J-A20024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GREGORY M. COTICCHIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALCOVERY SECURITY, LLC | : | |
| | : | |
| Appellant | : | No. 143 WDA 2021 |

Appeal from the Order Entered January 15, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD 14-017729

| | | |
|---|---|---|
| GREGORY M. COTICCHIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALCOVERY SECURITY, LLC | : | |
| | : | |
| Appellant | : | No. 144 WDA 2021 |

Appeal from the Order Entered January 15, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-15-000402

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: DECEMBER 8, 2021**

Appellant, Malcovery Security, LLC ("Malcovery"), appeals from the trial court's January 15, 2021 order, denying its motion for partial summary judgment. After careful review, we reverse and remand.

The trial court summarized the factual and procedural background of this case as follows:

In the fall of 2012, Malcovery … hired [Appellee,] Gregory M. [Coticchia,] … to serve as [Malcovery's] Chief Executive Officer ("CEO").[1]  As part of [Mr. Coticchia's] employment, [Mr. Coticchia] executed an Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") and two separate Service Provider Unit Issuance Agreements (the "SPU Agreements").  The LLC Agreement governs many of the rights, duties, and obligations of [Malcovery's] members, officers, and Board of Managers.  The SPU Agreements, on the other hand, specifically provided [Mr. Coticchia] with 3,200,000 common member units in [Malcovery's] company.  Pursuant to a vesting schedule set forth in the SPU Agreements, the common member units vested over[]time as [Mr. Coticchia] hit certain temporal milestones with [Malcovery].  In the event that [Mr. Coticchia's] employment with [Malcovery] came to an end, the SPU Agreements also provided [Malcovery] with a limited repurchase option to acquire [Mr. Coticchia's] [u]nits (the "Repurchase Option").

> [1] Malcovery … is a Delaware [l]imited [l]iability company with a registered office and principal place of business at 2400 Oxford Drive, Suite 302, Bethel Park, PA 15102.

On August 11, 2014, [Malcovery] terminated [Mr. Coticchia] as CEO.  At this time, it is undisputed that [Mr. Coticchia] vested a total of 2,693,334 common membership units ("[Mr. Coticchia's] Units").  Thereafter, on October 8, 2014, [Malcovery] sent [Mr. Coticchia] a letter noticing [Malcovery's] intent to exercise its Repurchase Option under the SPU Agreements.  As [Malcovery] and [Mr. Coticchia] did not reach an agreement as to the value [of Mr. Coticchia's] Units, [Malcovery] further notified [Mr. Coticchia] that [Malcovery] would, in accordance with the SPU Agreements, utilize a third-party appraiser.  On January 26, 2015, [Malcovery] sent [Mr. Coticchia] the third-party appraisal and a check for $57,333.34, attempting to close in full on the Repurchase Option. [Mr. Coticchia] did not cash the check.

On October 1, 2014, [Mr. Coticchia] commenced a shareholder action in the Court of Common Pleas of Allegheny County at GD 15-000402. On March 11, 2015, [Mr. Coticchia] filed an Amended Complaint. Then, on April 23, 2015, [Mr. Coticchia] filed a Second Amended Complaint.[2]  On May 14, 2015, [Malcovery] filed a [p]etition to [c]ompel arbitration.  In its [p]etition, [Malcovery] contended that, because the claims in [Mr. Coticchia's] Second Amended Complaint are based upon the LLC Agreement, [Mr. Coticchia's] Second Amended Complaint must be compelled to

- 2 -

arbitration in its entirety pursuant to the LLC Agreement's arbitration provision.[1]  On July 6, 2015, this [c]ourt issued an order partially granting [Malcovery's] [p]etition to [c]ompel [a]rbitration.  Specifically[,] this [c]ourt's July 6, 2015 order provided as follows:

> The [LLC] Agreement of Malcovery … contains a valid arbitration clause, and accordingly[,] the [p]etition to [c]ompel [a]rbitration is GRANTED in part.  Insofar as [Mr. Coticchia] relies upon the LLC [A]greement to explain or define responsibilities, rights, or obligations of any parties to this action or to the agreement, the Second Amended Complaint is DISMISSED, and the claims therein must be arbitrated in conformance with that agreement.  To the extent that [Mr. Coticchia] bases his claims on the [SPU] Agreement or anything outside the LLC Agreement, those claims are not dismissed.[2]
>
> > [2] The Second Amended Complaint is the final operative complaint and raised claims for breach of fiduciary duty, conversion, breach of contract, and accounting.  Additionally, on January 22, 2016, [Mr. Coticchia's] shareholder action at Case No.[] GD 15-000402 was consolidated with an employment action

---

[1] The LLC Agreement's arbitration provision provides that:

> (a) All controversies, claims, issues and other disputes among one or more Members and the Company or the Board of Managers in connection with this LLC Agreement or otherwise in connection with the Company (collectively, "Disputes") shall be settled exclusively by arbitration governed by applicable rules of the American Arbitration Association ("AAA").  Unless otherwise agreed by the parties to such Dispute, the arbitration shall be administered by the AAA.  Such arbitration proceedings shall be held in Birmingham, Alabama[,] and shall be heard by three (3) arbitrators to be designated by AAA.  Any dispute as to whether a Dispute is subject to arbitration shall be resolved by arbitration…[.]

Malcovery's Brief at 10 (citation omitted).

[2] We refer to this order herein as the "2015 arbitration order."

at Case No. 14-017729. However, the [e]mployment action is not pertinent to the relief requested in the instant appeal.

After the close of discovery, both [Mr. Coticchia] and [Malcovery] filed [m]otions for [p]artial [s]ummary [j]udgment regarding [Mr. Coticchia's] remaining claims for breach of contract and/or conversion in relation to the SPU Agreements.[3][, 3] On January 15, 2021, after hearing oral argument on the parties' motions, and after due consideration of all papers relevant to the same, this [c]ourt determined that genuine issues of material fact remain in dispute with regard to [Mr. Coticchia's] remaining claims. This [c]ourt also determined that [Mr. Coticchia's] remaining claims for breach of contract and/or conversion were based upon the SPU Agreements as opposed to the LLC Agreement, and, as such, were not subject to arbitration. Accordingly, this [c]ourt denied both parties' motions. [Malcovery] appealed.[4]

_____

[3] Mr. Coticchia withdrew his accounting claim without prejudice, and the trial court dismissed his breach of fiduciary duty claim on preliminary objections. **See** Order, 7/7/15, at 1 (unnumbered); Malcovery's Brief at 7; Mr. Coticchia's Brief at 11 n.1.

[4] Malcovery explained that the trial court's January 15, 2021 order denying its motion for partial summary judgment was

filed only on trial court docket GD 15-000402[, *i.e.*, the shareholder action's docket], which is on appeal at 144 WDA 2021. Further, Malcovery's motion for partial summary judgment, which the [o]rder denied, was also filed only on trial court docket GD 15-000402 and only sought relief with respect to claims asserted in case GD 15-000402. However, before it entered the [o]rder, the trial court consolidated case GD 15-000402 with another case previously filed by [Mr.] Coticchia[, specifically, the employment action], which is pending at trial court docket GD 14-017729 and is on appeal at 143 WDA 2021.

Although the [o]rder was only filed at trial court docket GD 15-000402, the [o]rder's caption identified both consolidated case numbers. Accordingly, Malcovery filed notices of appeal from the [o]rder on both of the consolidated trial court dockets out of an abundance of caution. **See Commonwealth v. Walker**, 185

³ In addition to requesting th[at Mr. Coticchia's] claims be dismissed, [Malcovery's] [m]otion for [s]ummary [j]udgment also again requested that [Mr. Coticchia] be compelled to take his remaining claims to arbitration pursuant to the parties' LLC Agreement. [Mr. Coticchia's] claims for conversion and breach of contract in relation to the SPU Agreements at Case No.[] GD 15-000402 are the only claims at issue in both parties' [m]otions for [p]artial [s]ummary [j]udgment.

Trial Court Opinion ("TCO"), 4/6/21, at 1-3 (unnumbered).

After Malcovery appealed, the trial court ordered it to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Malcovery timely complied.

Presently, Malcovery raises the following two issues for our review:

1. Is the trial court's order denying Malcovery's [m]otion for [p]artial [s]ummary [j]udgment immediately appealable where (1) the motion was, in substance, a request to compel arbitration, and (2) Malcovery properly raised the issue of arbitrability at the summary judgment stage after previously filing a petition to compel arbitration that the trial court granted in part?

2. Is [Mr.] Coticchia's conversion claim subject to arbitration where (1) the parties agreed that the issue of arbitrability was for an arbitrator to decide, and (2) to the extent the issue of arbitrability is for a court to decide, the conversion claim arises from and relates to the parties' LLC Agreement and therefore falls

A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case."). Although Malcovery is not appealing any order entered on trial court docket GD 14-017729, it does anticipate referring to the pleadings in that case for background in its appeal of the [o]rder.

Application to Consolidate Appeals, 4/21/21, at 1-3 (most internal citations omitted). Therefore, Malcovery requested that the appeals be consolidated, and we granted that request on April 27, 2021.

within that agreement's indisputably broad arbitration provision[?]

Malcovery's Brief at 3-4.

We must begin our review by assessing the propriety of Malcovery's appeal from the trial court's January 15, 2021 order denying its motion for partial summary judgment, which Malcovery itself raises in its first issue. It is well-established that "an order denying summary judgment is ordinarily a non-appealable interlocutory order." ***McDonald v. Whitewater Challengers, Inc.***, 116 A.3d 99, 104 (Pa. Super. 2015) (citation omitted). Nevertheless, Malcovery argues that the trial court's January 15, 2021 order is immediately appealable pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(8) because "Malcovery's motion for summary judgment was, in substance, a request to compel arbitration of [Mr.] Coticchia's conversion claim." Malcovery's Brief at 14; ***see also id.*** at 1.[5] Rule 311(a)(8) provides that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not

_____

[5] Malcovery does not seek to have Mr. Coticchia's breach of contract claim arbitrated. ***See*** Malcovery's Brief at 15 ("But even if [Mr.] Coticchia's breach of contract claim (which is not at issue in this appeal) arises from the SPU Agreements, his conversion claim — which is the claim that Malcovery sought to have arbitrated — does not. That is because, unlike [Mr.] Coticchia's breach of contract claim, his conversion claim depends on the rights and privileges that are granted to him only in the LLC Agreement."); ***id.*** at 11 (explaining that Mr. Coticchia's "breach of contract claim alleges that Malcovery breached a provision in each of the SPU Agreements (the 'Repurchase Option') giving Malcovery an option to repurchase [Mr.] Coticchia's unit shares upon the termination of his employment and specifying the procedures to do so") (citation omitted); ***see also id.*** at 12, 17-18.

dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8); **see also** 42 Pa.C.S. § 7320(a)(1) (stating an appeal may be taken from a court order denying an application to compel arbitration); **Porter v. Toll Bros., Inc.**, 217 A.3d 337, 344 n.1 (Pa. Super. 2019) ("A party may appeal from an order denying a petition to compel arbitration.") (citation omitted). Malcovery points out that, in its motion for partial summary judgment, it expressly requested that the trial court compel arbitration of Mr. Coticchia's conversion claim. It therefore insists that its summary judgment motion should be characterized as a motion to compel arbitration even though it was filed at the summary judgment stage. Malcovery's Brief at 17-18 (citations omitted). Furthermore, Malcovery contends that it properly asserted its request for arbitration at the summary judgment stage because the trial court's 2015 arbitration order ruled that Mr. Coticchia's claims were subject to arbitration to the extent they relied on the LLC Agreement, but it left unresolved whether his claims actually relied on that agreement. **See id.** at 19-20.[6] Malcovery

---

[6] In more detail, Malcovery sets forth that:

> Because the … 2015 [arbitration o]rder left unresolved which of [Mr.] Coticchia's claims were subject to arbitration, Malcovery promptly filed a motion for clarification. The trial court never decided that motion. In addition, [Mr.] Coticchia represented that his remaining claims did not depend on the LLC Agreement.

> Therefore, Malcovery was not aggrieved by the trial court's … 2015 [arbitration] order. The order made clear that claims that depended on the LLC Agreement were subject to arbitration, and [Mr.] Coticchia's response to Malcovery's motion for clarification represented that he was asserting no such claims. Malcovery had

- 7 -

explains that, "[w]hen continued discovery established that [Mr.] Coticchia's claims did, in fact, depend on the LLC Agreement, Malcovery properly raised the [arbitration] issue again at the summary judgment stage." *Id.* at 20.

Mr. Coticchia disputes Malcovery's position on appealability. First, he contends that "Malcovery is improperly appealing a motion for partial summary judgment[,]" noting that "[t]he denial of a motion for summary judgment is an interlocutory order." Mr. Coticchia's Brief at 28 (emphasis, unnecessary capitalization, and citation omitted). He says that, in its summary judgment motion, "Malcovery argued to the [t]rial [c]ourt that [Mr.] Coticchia's conversion count was: (i) either in fact relying on the LLC Agreement; and/or (ii) otherwise must be dismissed because it cannot proceed without relying on the LLC Agreement. Neither of these requests are a request to compel arbitration, nor are they supported by the record." *Id.* at 22; *see also id.* at 28-32. Further, he observes that Malcovery's summary judgment motion was not captioned as a motion to compel arbitration and "neither its wherefore clause, proposed order of court <u>or</u> the [t]rial [c]ourt's actual [summary judgment o]rder addresses arbitration." *Id.* at 31 (emphasis in original; citation omitted). Therefore, he concludes that Malcovery's appeal is improper.

_____

no reason to appeal the … 2015 [arbitration] order, and it had no choice but to proceed with discovery.

Malcovery's Brief at 19-20 (internal citations omitted).

Second, to the extent the trial court's January 15, 2021 order is appealable, Mr. Coticchia insists that "Malcovery failed to preserve its request to compel arbitration when it failed to appeal the determinations made in the 2015 [a]rbitration [o]rder within thirty (30) days." ***Id.*** at 25 (citations omitted); ***see also id.*** at 27. In support, he cites to Pennsylvania Rule of Appellate Procedure 311(g)(1)(iv), which provides that "[f]ailure to file an appeal from an interlocutory order refusing to compel arbitration, appealable under 42 Pa.C.S. § 7320(a)(1) and subparagraph (a)(8) of this rule, shall constitute a waiver of all objections to such an order." Pa.R.A.P. 311(g)(1)(iv); ***see also*** Mr. Coticchia's Brief at 25. Mr. Coticchia claims that the trial court's 2015 arbitration order "found that as long as [Mr.] Coticchia based his claims on common law or the SPU Agreements, his claims were not subject to arbitration. Malcovery did not appeal the determinations made in the 2015 [a]rbitration [o]rder, waiving any challenges thereto." Mr. Coticchia's Brief at 27 (citations omitted). Thus, Mr. Coticchia says that "[t]he only issue which could remain[] was whether or not [Mr.] Coticchia actually relied on the LLC Agreement in advancing his claims, which would result in dismissal under the 2015 [a]rbitration [o]rder. All other challenges related to arbitration were not preserved, and waived, by Malcovery's failure to appeal the 2015 [a]rbitration [o]rder." ***Id.*** at 20.

In reply, Malcovery reiterates that it "did not appeal the trial court's … 2015 [arbitration] order, which granted in part Malcovery's petition to compel arbitration, because Malcovery was not aggrieved by that order. The trial

court's … 2015 [arbitration] order did not resolve whether [Mr.] Coticchia's claims actually depended on the LLC Agreement, but it held that if they did, those claims must be arbitrated." Malcovery's Reply Brief at 1. Accordingly, in the 2015 arbitration order, Malcovery says that "the trial court took a 'wait and see' approach, suggesting that it viewed [Mr.] Coticchia's claims as potentially falling within the scope of the LLC Agreement's arbitration provision, depending upon how [he] framed his claims following discovery." *Id.* at 4. Malcovery restates that, "[u]ntil discovery made clear that [Mr.] Coticchia was relying (and had to rely) on the LLC Agreement to support his conversion claim, the trial court's inconclusive ruling on Malcovery's petition to compel arbitration did not aggrieve Malcovery." *Id.* at 5.

Upon review of this unusual procedural question, we initially agree with Malcovery that — although an order denying summary judgment is ordinarily a non-appealable interlocutory order, *see McDonald*, *supra* — its summary judgment motion clearly requested that the trial court compel arbitration of Mr. Coticchia's conversion claim because that claim relies upon the LLC Agreement to explain or define the responsibilities, rights, or obligations of the parties to the action. *See* Malcovery's Motion for Partial Summary Judgment, 10/2/17, at ¶ 10 ("[B]ecause [Mr. Coticchia's] conversion claim relies upon Malcovery's LLC Agreement to explain or define the responsibilities, rights, or obligations of the parties to this action, the claim should be dismissed and arbitrated in accordance with the terms of the LLC Agreement.") (citation omitted); *see also id.* at ¶ 27 ("Because [Mr.

Coticchia's] allegations supporting his conversion claim require that he rely on the LLC Agreement to explain or define the responsibilities, rights, or obligations of himself and Malcovery, the [c]ourt's … 2015 [arbitration o]rder requires that the action be dismissed and arbitrated in conformance with the LLC Agreement."); ***see generally id.*** at ¶¶ 19-27.[7]   In the trial court's January 15, 2021 order, it denied that request, effectively declining to compel arbitration.   Consequently, we conclude that the January 15, 2021 order is appealable pursuant to Rule 311(a)(8).

However, though the January 15, 2021 order is appealable, our review of it is not unlimited.  We concur with Mr. Coticchia that Malcovery has waived many of its arguments pertaining to arbitration based on its failure to timely appeal the trial court's 2015 arbitration order.   For instance, because Malcovery did not appeal the trial court's 2015 arbitration order, we deem waived its arguments that the question of arbitrability was reserved for an arbitrator, ***see, e.g.***, Malcovery's Brief at 22-23 (arguing that "[t]he LLC Agreement expressly provides that '[a]ny dispute as to whether a Dispute is

_____

[7] While Mr. Coticchia complains, among other things, that the caption of Malcovery's motion and its wherefore clause did not explicitly mention arbitration, we agree with Malcovery that to focus on such stylistic details would elevate form over substance.   Malcovery's Reply Brief at 9 ("Mr. Coticchia essentially argues that Malcovery's motion for summary judgment did not qualify as a request for arbitration — even though it clearly requested arbitration, and even though both he and the trial court understood that it requested arbitration — because it was styled as a motion for summary judgment.  But it would put form over substance to hold that the trial court's order is not appealable just because Malcovery's motion was styled as a motion for summary judgment rather than a motion to compel arbitration.").

- 11 -

subject to arbitration shall be resolved by arbitration'") (citation omitted), and that the SPU Agreements and LLC Agreement should be read together. *Id.* at 43-44 ("[T]he SPU Agreements expressly required [Mr.] Coticchia to execute the LLC Agreement, which he did. In addition, the arbitration clause in the LLC Agreement applies not only to disputes arising under the LLC Agreement specifically, but also to any dispute 'otherwise in connection with the Company.' It is therefore clear that the parties intended the arbitration clause to apply not only to disputes specifically arising from the LLC Agreement, but any disputes involving Malcovery — which would also include disputes arising from the SPU Agreements.") (citations omitted). Malcovery advanced these same challenges in 2015, at which time the trial court determined that it could decide arbitrability and that Mr. Coticchia's claims were not subject to arbitration to the extent he based his claims on the SPU Agreement or anything outside the LLC Agreement.[8] Malcovery's failure to appeal from the trial court's 2015 arbitration order has waived those issues for our review.

_____

[8] *See* Malcovery's Petition to Compel, 5/14/15, ¶ 4 (explaining that the LLC Agreement's arbitration provision provides that "[a]ll controversies, claims, issues, and other disputes among one or more Members and the Company or the Board of Managers in connection with this LLC Agreement or other in connection with the Company (collectively, 'Disputes') shall be settled exclusively by arbitration….") (emphasis and citation omitted); *id.* at ¶ 6 ("The LLC Agreement is incorporated by reference into the [SPU Agreements]…. The LLC Agreement works in conjunction with the SPU Agreements."); *id.* at ¶ 7 ("[Mr. Coticchia] also agreed to arbitrate the issue of arbitrability. The LLC Agreement expressly states that '[a]ny dispute as to whether a Dispute is subject to arbitration shall be resolved by arbitration.'") (citation omitted).

*See* Pa.R.A.P. 311(g)(1)(iv).[9] Therefore, the only issue we will consider is whether Mr. Coticchia's conversion claim relies upon the LLC Agreement to explain or define the responsibilities, rights, or obligations of any parties, in which case dismissal would result under the 2015 arbitration order.

"We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004) (citation omitted). "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." *Id.* (citations omitted).

Here, in determining that Mr. Coticchia's conversion claim is based on the SPU Agreements and therefore not subject to arbitration, the trial court explained, in relevant part, that:

> As a matter of public policy, the state of Delaware favors arbitration.[4] However, "the policy favoring arbitration does not cast aside basic contract principles," including the general principle that parties to a contract are not obligated to do anything they did not agree to do. The Supreme Court of Delaware clarified that "arbitration is a matter of contract and a party cannot be

---

[9] Malcovery does not argue that Rule 311(g)(1)(iv) does not apply. Instead, it simply argues that it was not aggrieved by the trial court's 2015 arbitration order and, therefore, had no need to file an appeal from it. *See* Malcovery's Brief at 20; Malcovery's Reply Brief at 1, 3-6.

required to submit to arbitration any dispute which he has not agreed so to submit."

> [4] This [c]ourt cites the law of the state of Delaware because paragraph 6 of both the SPU Agreement[s] provides that "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to any choice of law rules that may direct the application of the laws of another jurisdiction."[10]

In this instant case, the crux of the parties' dispute (with regard to [Mr. Coticchia's] claims for conversion and breach of contract at Case No.[] GD 15-000402) is whether [Malcovery] exercised its Repurchase Option in a timely manner. Indeed, it is the SPU Agreements, and *not* the LLC Agreement, which define the processes by which [Malcovery] is able to exercise the Repurchase Option. Specifically, the SPU Agreements provide as follows:

> (a) In the event that the Service Provider's employment with the Company shall be terminated by the Company (for any reason whatsoever or no reason or due to the death or disability of the Service Provider), or the Service Provider shall resign from his employment with the Company (for any reason whatsoever or no reason), at any time, then the Company shall have an option, but not an obligation, to purchase (exercisable at any time within one hundred twenty (120) days after the date o[f] termination or resignation), and the Service Provider or his heirs, estate, executor(s), administrator(s) or personal representative(s), if applicable, shall be obligated to sell to the Company, all or any portion of the Non-Forfeitable Units held by the Service Provider immediately prior to such termination or resignation, as applicable, for a purchase price equal to (i) unless the cessation of employment results from a termination for Cause, the Fair Market Value of such Service Provider Units, or (ii) if the cessation of employment results from a termination for cause, twenty-five percent (25%) of the Fair Market Value of such Service Provider Units. For the purposes of the Agreement, "Fair Market Value" shall mean: (A) the fair market value agreed upon by the Service Provider or his or her applicable heirs, executors, or

---

[10] The LLC Agreement is also to be interpreted according to Delaware law. *See* Malcovery's Brief at 22 (citations omitted).

personal representatives, on the one hand, and the Board on the other hand; or (B) if such parties fail to agree as to such fair market value within thirty (30) days following the Company's exercise of its repurchase right, the fair market value shall be determined in accordance with Section 3(b) hereof.

(b) If the parties fail to agree upon the Fair Market Value of the applicable Service Provider Units in accordance with Section 3(a)(A) hereof, then such Fair Market Value shall be determined by an appraiser selected by the Board, provided that: (i) the appraiser must have no less than ten (10) years of experience in determining the valuation of businesses similar to that being conducted by the Company; and (ii) the appraiser must not then be providing services to the Company or any of its other members or managers or have provided services to the Company or any of its other members or managers during the prior two (2) years. The appraiser shall make its determination as promptly as practicable, and such determination shall be final and binding on the Service Provider or his or her applicable heirs, executors, personal representatives, on the one hand, and the Company, on the other hand. The Service Provider or his or her applicable heirs, executors, or personal representative shall be responsible for paying the other one-half (1/2) of the fess expenses [*sic*] of the appraiser. For purposes of this Section 3(b), the Fair Market Value of the applicable Service Provider Units shall be based upon all considerations that the appraisers determine to be relevant, which shall specifically and primarily include the Capital Account balance allocable to the Service Provider's Service Provider Units (assuming, if the redemption does not cause the same to occur, that there has been an adjustment to Gross Asset Value in the manner contemplated by the definition of "Gross Asset Value" in the LLC Agreement immediately prior to the cessation of employment).

(c) The aggregate purchase price payable pursuant to th[is] Section 3 for any Service Provider Units shall be paid in the following manner: (i) first, there shall be credited against such purchase price the amount of any indebtedness due and payable to the Company by the Service Provider; and (ii) second, the balance of the purchase price shall be payable at a closing which shall occur within thirty (30) days following the exercise of the Company's option to purchase,

provided, however, upon the election of the Company, the balance of the purchase price due by the Company shall be payable in four (4) equal semi-annual installments, with interest at the then prime rate quoted in the *Wall Street Journal*, the first installment of which shall be due within thirty (30) days following the exercise of the Company's option to purchase with each subsequent installment due on the annual or semi-annual, as the case may be, anniversary of the first installment.

In regards to the above section of the SPU Agreements, [Mr. Coticchia] claims that, pursuant to paragraph 3(c) of the SPU Agreement, [Malcovery] had thirty (30) days following the exercise of [Malcovery's] option to either: (1) pay [Mr. Coticchia] the balance of the purchase price for [Mr. Coticchia's] Units in full; or (2) pay [Mr. Coticchia] the first of four (4) semi-annual installments, with interest at the current prime rate quoted in the *Wall Street Journal*. [Mr. Coticchia] asserts that, because [Malcovery] exercised its Repurchase Option on October 8, 2014, but did not attempt to close with [Mr. Coticchia] until January 26, 2015, [Malcovery] failed to comply with the requirements of paragraph 3(c).[5] In contrast, [Malcovery] argues that paragraph 3(c) is not applicable because the parties could not come to an agreement as to the Fair Market Value of [Mr. Coticchia's] Units, and, therefore, in accordance with paragraph 3(b), the parties had to engage a third-party appraiser selected by [Malcovery's] Board. According to [Malcovery], when the parties are operating under paragraph 3(b) of the SPU Agreement, the only time requirement is that "[t]he appraiser shall make its determination as promptly as practicable."

> [5] [Mr. Coticchia] contends that, because [Malcovery] failed to properly repurchase [Mr. Coticchia's] Units pursuant to the SPU Agreement[s], [Mr. Coticchia] still owns [his] Units. [Malcovery's] actions in depriving [Mr. Coticchia] of his rights as a shareholder constitute either conversion and/or breach of contract.

As to the means by which the parties agreed to resolve disputes, including the dispute described above, the SPU Agreements merely contain a provision stating that the parties agree to utilize Delaware law. Unlike the LLC Agreement, the SPU Agreements do not contain an arbitration provision. The SPU Agreements do, however, contain integration clauses….

Again, [Malcovery] argues that this [c]ourt should ignore the integration clauses present in the SPU Agreements and enforce the arbitration provision in the LLC Agreement, because, according to [Malcovery], [Mr. Coticchia's] claims for conversion and/or breach of contract under the SPU Agreement implicate [Mr. Coticchia's] rights as a shareholder and whether [Malcovery] properly terminated [Mr. Coticchia] for cause, both of which are defined and governed by the LLC Agreement. [Malcovery] further contends that, because this [c]ourt must analyze both of these issues in order to determine whether [Malcovery] complied with the terms of paragraph 3 of the SPU Agreement in exercising [Malcovery's] Repurchase Option, any dispute regarding paragraph 3 of the SPU Agreement must be resolved in accordance with [the] terms of the LLC Agreement. This is simply not the case. Indeed, the specific issue of whether [Malcovery] timely exercised its Repurchase Option is *not* dependent on whether [Mr. Coticchia] was properly terminated for cause, or to the extent to which [Malcovery] deprived [Mr. Coticchia] of any rights as a shareholder. Rather, in order to determine whether [Malcovery] timely exercised its Repurchase Option, this [c]ourt need only resolve the genuine issues of material fact that remain regarding the interpretation of the time requirements in paragraph 3 of the SPU Agreements. Thus, this [c]ourt is not persuaded that the issue of whether [Malcovery] exercised its Repurchase Option in a timely manner pursuant to the SPU Agreement is subject to the LLC Agreement's arbitration provision.

TCO at 4-8 (internal citations and some footnotes omitted; emphasis in original).

Malcovery complains that the trial court's "refusal to compel arbitration was based on an incorrect conclusion that [Mr.] Coticchia's claims arise only from the SPU Agreements and not the LLC Agreement." Malcovery's Brief at 32. It says that the trial court "summarized [Mr.] Coticchia's claim as alleging that Malcovery failed to pay [Mr.] Coticchia for his unit shares and that Malcovery failed to timely exercise the Repurchase Option. However, the trial court overlooks that the basis for [Mr.] Coticchia's conversion claim was not

that Malcovery failed to pay him for his service provider units." *Id.* (citation omitted). Instead, Malcovery insists that Mr. Coticchia's "conversion claim is based on Malcovery's alleged deprivation of [Mr.] Coticchia's rights and privileges of ownership of those unit shares — rights and privileges that are defined only in the LLC Agreement and not the SPU Agreements." *Id.* at 32-33. Thus, because Mr. Coticchia's conversion claim is based on the alleged violation of his rights as a unit holder and because those rights are defined in the LLC Agreement, Malcovery contends that Mr. Coticchia's conversion claim should be arbitrated pursuant to the LLC Agreement's arbitration provision.

We recognize that, in Delaware, "a claim of conversion requires that, at the time of the alleged conversion: (a) [the] plaintiff held a property interest in the stock; (b) [the] plaintiff had a right to possession of the stock; and (c) the defendant converted [the] plaintiff's stock." *Arnold v. Society of Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (citation omitted). "Conversion is an 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'" *Id.* (citation omitted). "A stockholder's shares are converted by 'any act of control or dominion … without the [stockholder's] authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company.'" *Id.* (citations omitted; brackets in original).

Here, in Mr. Coticchia's second amended complaint, he made the following allegations in support of his conversion claim:

56. [Malcovery] ha[s] wrongfully exerted dominion over [Mr.] Coticchia's units, converted them without paying fair market value for shares, and denied [Mr.] Coticchia all rights consistent with having an ownership interest in such units.

57. [Malcovery] ha[s] exercised [its] dominion and control of [Mr.] Coticchia's units, converted them and deprived [Mr.] Coticchia the benefit of such units, by, upon information and belief, including but not limiting to, failing to recognize the rights consistent with [Mr.] Coticchia's ownership in the same by failing to permit [Mr.] Coticchia to attend meetings of the equity owners of Malcovery, failing to provide [Mr.] Coticchia with Malcovery's financial information and/or failing to permit [Mr.] Coticchia to inspect Malcovery's books and records, taking the position that [Mr.] Coticchia no longer has any member units in Malcovery, failing to recognize [Mr.] Coticchia's ownership rights in Malcovery by timely providing him the required tax documentation and/or otherwise communicating with [Mr.] Coticchia regarding the timing of the release of tax information reflecting his unit ownership, failing to disclose material information that would have been required to [have] been provided to [Mr.] Coticchia had they recognized [Mr.] Coticchia as an owner of membership units, and marketing to third-parties that [Mr.] Coticchia no longer is a member in Malcovery.

58. As a direct and proximate cause of the actions of [Malcovery], [Mr.] Coticchia has been damaged in the amount of the full market value of his units.

Second Amended Complaint, 4/23/15, at ¶¶ 56-58.

Further, in addition to the allegations in Mr. Coticchia's complaint, Malcovery says that "discovery made clear that [Mr.] Coticchia's conversion claim is predicated on his alleged deprivation of his rights as a unit holder — not some failure by Malcovery to properly purchase his shares under the SPU Agreements." Malcovery's Brief at 35. It details that:

At his deposition, [Mr.] Coticchia testified that he was "a unit holder in Malcovery up until August 11, 2014" — *i.e.*, the date of his termination — but ceased being so after that time. However, his testimony revealed that his conversion claim is based on a deprivation of his rights as a unit holder. He explained that after

- 19 -

August 11, 2014, his "rights as a shareholder were taken away," and his "units were converted without compensation." He further stated:

> My rights, I was treated … differently than other — intentionally than other member shareholders. I was not given the same rights and privileges and access to financial information, to general information about the company or voting rights, and essentially, stripped of all rights and converted units — converted my units without any compensation.

In other words, discovery confirmed that the basis of [Mr.] Coticchia's conversion claim was that he was "stripped … of [his] rights as a unit holder" and that he "was not given the same rights and privileges" that he believed he was entitled to.

Malcovery's Brief at 35-36 (internal citations omitted).

According to Malcovery, "[t]he rights that [Mr.] Coticchia claims to have been deprived of exist only because of the LLC Agreement." *Id.* at 37. Malcovery advances that, Delaware's Limited Liability Company Act, 6 Del. C. § 18-101 *et seq.*, "provides members of an LLC 'broad discretion in drafting' an LLC agreement, while 'furnish[ing] default provisions when the members' agreement is silent.[']" *Id.* (quoting *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 291 (Del. 1999)). It states that, in the case *sub judice*, the LLC Agreement provides members of Malcovery with certain rights and obligations, and outlines how members, *inter alia*, are able to inspect records, receive financial information, and participate in meetings. *See id.* at 38, 39.[11]

_____

[11] It also observes that Mr. Coticchia "acknowledged during his deposition that any rights he had as a member of Malcovery did not arise from the SPU Agreements." Malcovery's Brief at 42 (citation omitted). In particular, Malcovery argues that Mr. Coticchia testified that the SPU Agreements did not:

Moreover, Malcovery points out that — even to the extent that Mr. Coticchia claims he was deprived of rights under Delaware law in addition to rights specifically defined under the LLC Agreement — those rights are still in connection with the LLC Agreement and fall within the arbitration clause. **See id.** at 39-40; **see also id.** at 37 (explaining that, pursuant to Delaware law, limited liability company agreements are contracts and that such agreements operate to displace otherwise applicable default provisions of Delaware's Limited Liability Company Act) (citations omitted).

In opposition, Mr. Coticchia counters that "[t]he SPU Agreements are the documents that define Malcovery's ability to dispose of the Coticchia Units." Mr. Coticchia's Brief at 38. Furthermore, he avers that "[t]he record establishes that [Mr.] Coticchia does not and need not base his claims on the LLC Agreement." **Id.** at 37 (emphasis and unnecessary capitalization omitted). Specifically, he asserts that he does not need to rely on the LLC Agreement to advance his conversion claim, explaining:

> "[A] defendant engaged in conversion by exercising unlawful dominion over the membership interests in an LLC." **Bamford v. Penfold, L.P.**, No. 2019-0005-JTL, 2020 Del. Ch. LEXIS 79 at *62; 2020 WL 967942 (Del. Ch. Dec. 4, 2019) (citing **Perry v.**

_____

(1) "expressly communicate[]" members of the company had the right to access company books and records; (2) provide members with the right to receive notices of meetings; (3) provide members the right to receive notices of membership actions; or (4) provide a member with the right to participate in member meetings.

**Id.** (citation omitted).

> **Neupert**, No. 2017-0290-JTL, 2019 Del. Ch. LEXIS 56, 2019 WL 719000, at *24-25 (Del. Ch. Feb. 15, 2019)).[12]
>
> [Mr.] Coticchia bases his claims against Malcovery for the exercise of the unlawful dominion over the Coticchia Units, which Malcovery claims to have done pursuant to an option under the SPU Agreements. The record is replete with Malcovery's admissions that Malcovery believes it has fully divested [Mr.] Coticchia of the Coticchia Units (pursuant to its actions in January 2015 under the SPU Agreements) and no longer recognizes [Mr.] Coticchia as an owner.
>
> These admissions include, but are not limited to: (i) an April 29, 2015 letter drafted by Malcovery's counsel denying [Mr.] Coticchia's equity ownership; (ii) a June 9, 2015 document provided to a third-party company (PhishMe) acquiring Malcovery disputing [Mr.] Coticchia's ownership; and (iii) annual letters drafted by Malcovery's counsel each tax year denying [Mr.] Coticchia's ownership. Malcovery has never denied these admissions, including at the time of oral argument on Malcovery's [motion for summary judgment].
>
> [Mr.] Coticchia can proceed with his conversion claims on these admissions alone and does not and need not base his claims on the LLC Agreement in light of these admissions. Evidence of Malcovery's conduct in excluding [Mr.] Coticchia and treating him differently than other members merely supplements Malcovery's admissions but is not required in order for [Mr.] Coticchia to advance his claims. Accordingly, the record is clear that [Mr.] Coticchia's claims are not subject to arbitration under the 2015 [a]rbitration [o]rder.

Mr. Coticchia's Brief at 38-40 (internal citations omitted).

In response, Malcovery points out that, even if Mr. Coticchia based his conversion claim on these three admissions, they do no establish that Mr. Coticchia's claim "depends only on the SPU Agreements and not the LLC

---

[12] We note that the **Bamford** Court also states that "[c]onversion is any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." **See Bamford**, **supra**, at *22 (quotation marks and citation omitted). Thus, conversion is not merely the exercise of unlawful dominion.

Agreement." Malcovery's Reply Brief at 14. Malcovery discerns that Mr. Coticchia "does not explain how making incorrect statements about [Mr.] Coticchia's equity ownership constitutes a breach of the SPU Agreements." *Id.*; *see also id.* ("The SPU Agreements may govern whether Malcovery effectuated a buyback of [Mr.] Coticchia's shares, but it does not specify Malcovery's duties, if any, to make truthful statements to third parties regarding [Mr.] Coticchia's share ownership."). Further, Malcovery notes that, in any event, "it is beside the point that [Mr.] Coticchia believes he could successfully base his conversion claim on only those three supposed admissions, because that is not how he has framed his claim." *Id.* Instead, Malcovery emphasizes that Mr. Coticchia "alleged that he was deprived of rights that derive from the LLC Agreement, and his admissions in discovery confirm that fact." *Id.*

After studying the trial court's opinion and the parties' arguments, we are persuaded that Mr. Coticchia's conversion claim is based on the LLC Agreement. First, we agree with Malcovery that Mr. Coticchia's conversion claim concerns the alleged deprivation of his rights and privileges of ownership of the unit shares. *See Arnold*, 678 A.2d at 536 ("A stockholder's shares are converted by 'any act of control or dominion … without the [stockholder's] authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company.'"). In his complaint, Mr. Coticchia alleged that Malcovery deprived him of all rights consistent with having an ownership interest in the units and listed therein the benefits that Malcovery purportedly

denied him. *See* Second Amended Complaint at ¶ 57, set forth *supra*. In addition, at his deposition, Mr. Coticchia complained that he was "stripped … of [his] rights as a unit holder" and was not "given the same rights and privileges and access to financial information, to general information about the company or voting rights…." Malcovery's Brief at 36 (citations omitted). Thus, Mr. Coticchia's conversion claim is not simply about Malcovery's alleged failure to pay him for his unit shares and/or failure to timely exercise the Repurchase Option; it is about the rights he was purportedly deprived of as a unit holder. Accord TCO at 7 n.5 ("[Mr. Coticchia] contends that, because [Malcovery] failed to properly repurchase [his] Units pursuant to the SPU Agreement[s], [Mr. Coticchia] still owns [his] Units. Thus, [Malcovery's] actions in *depriving [Mr. Coticchia] of his rights as a shareholder* constitute either conversion and/or breach of contract.") (emphasis added). As such, we ascertain that the trial court erred in determining that Mr. Coticchia's conversion claim was based upon the SPU Agreements as opposed to the LLC Agreement. *See* TCO at 3 ("This [c]ourt also determined that [Mr. Coticchia's] remaining claims for breach of contract and/or conversion were based upon the SPU Agreements as opposed to the LLC Agreement, and, as such, were not subject to arbitration.").

Second, we disagree with Mr. Coticchia that the record establishes that he does not, and need not, base his conversion claim on the LLC Agreement. *See* Mr. Coticchia's Brief at 37. Even if Mr. Coticchia bases his claim on Malcovery's three admissions denying his ownership, Mr. Coticchia does not

- 24 -

specifically explain why Malcovery has a duty to make truthful statements regarding Mr. Coticchia's unit ownership, how such statements constitute a disregard, violation, or denial of his rights as a unit holder of the company, and where his rights as a unit holder come from if not the LLC Agreement. Further, as Malcovery discerns, Mr. Coticchia did not limit his conversion claim to these three admissions in his complaint or at his deposition. Instead, in his complaint and at his deposition, he complained that he was deprived of rights — such as being able to vote and having access to financial information — that derive from the LLC Agreement. **See** Second Amended Complaint at ¶ 57; Malcovery's Brief at 35-36; **id.** at 38-39.

Because Mr. Coticchia's conversion claim is based on the responsibilities, rights, and obligations set forth in the LLC Agreement, we determine that his conversion claim must be dismissed and arbitrated. Accordingly, we reverse the trial court's January 15, 2021 order to the extent it declined to dismiss and compel arbitration of Mr. Coticchia's conversion claim, and remand for the trial court to dismiss and compel arbitration of that claim.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2021

- 25 -